## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

INTERACTIVE
COMMUNICATIONS
INTERNATIONAL, INC. and
INCOMM FINANCIAL
SERVICES, INC.,

     *Plaintiffs*,

v.

DAVID CHIU and the CITY AND
COUNTY OF SAN FRANCISCO,

     *Defendants*.

Civil Action No. 1:24-cv-05335-VMC

**JURY TRIAL DEMANDED**

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6) AND MOTION TO STRIKE PURSUANT TO RULE 12(f)**

CHILIVIS GRUBMAN
Lauren A. Warner
Brandi Z. Murrain
Sanjay Karnik
1834 Independence Square
Atlanta, GA 30338

*Counsel for Defendants David Chiu and the City and County of San Francisco*

## Table of Contents

I.   FACTUAL ALLEGATIONS ....................................................................2

II.  LEGAL STANDARDS .......................................................................5

   A.  Rule 12(b)(2), Lack of Personal Jurisdiction ..................................5

   B.  Rule 12(b)(6), Failure to State a Claim .........................................6

   C.  Rule 12(f), Motion to Strike ........................................................6

III. ARGUMENT ....................................................................................7

   A.  The Court Lacks Personal Jurisdiction Over the Defendants.........................7

      1.  Georgia's Long Arm Statute Does Not Authorize Personal Jurisdiction
          Over the Defendants. .............................................................8

      2.  Due Process Considerations Prohibit the Exercise of Personal Jurisdiction
          Over Defendants. ..................................................................12

   B.  InComm's Claims Should Be Dismissed as Compulsory Counterclaims......15

   C.  The City and Chiu Are Immune from Suit. ....................................17

      1.  Defendants Have Eleventh Amendment Immunity as State of California
          Actors. ...............................................................................18

      2.  City Attorney Chiu Enjoys Absolute Immunity. .........................19

      3.  City Attorney Chiu Enjoys Qualified Immunity. ........................21

   D.  InComm's §1983 Claims Fail under *Monell*. ................................22

   E.  InComm Fails to Allege a §1983 "Class of One" Equal Protection Claim...24

   F.  In Comm Fails to State a Dormant Commerce Clause Claim.......................26

   G.  InComm Fails to Allege Defamation and Stigma-Plus Claims. ...................26

      1.  Georgia Law Bars InComm's Defamation Claim.....................................27

      2.  InComm Pleads No Constitutional Violation to Support Its Stigma-Plus
          Claim. ................................................................................31

   H.  InComm Cannot Pursue an Independent Claim for Declaratory Judgment..32

   I.   The Anti-Injunction Act Prohibits the Requested Injunctive Relief. ............33

   J.   InComm's Immaterial, Impertinent Allegations Should be Stricken. ...........34

IV.  CONCLUSION...............................................................................35

# Table of Authorities

## Cases

*Aero Toy Store, LLC v. Grieves,* 279 Ga. App. 515 (2006)........................................9

*Align Tech., Inc. v. Tran*, 179 Cal. App. 4th 949 (2009) ..........................................17

*Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486 (11th Cir. 1985)...............16

*Amin v. NBCUniversal Media, LLC*, 5:21-CV-56, 2022 WL 16964770 (S.D. Ga. Nov. 16, 2022)........................................................................................................30

*Arrington v. Cobb Cnty.,* 139 F.3d 865 (11th Cir. 1998).........................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................6

*Barati v. Fla. Att'y Gen.*, No. 18-13998, 2021 WL 2911729 (11th Cir. July 12, 2021) ................................................................................................................ 24, 25

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997) ....................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................6

*Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981)....................................15

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255 (2017)................................................................................................................13

*Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002 (11th Cir. 1992) ..............................21

*Butz v. Economou,* 438 U.S. 478 (1978)..................................................................20

*Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, 2022 WL 4375364 (11th Cir. Sept. 22, 2022) ......................................................................................20

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018) ................29

*Carruth v. Bentley*, 942 F.3d 1047 (11th Cir. 2019)..................................................24

*Cleckner v. Republic Van & Storage Co.*, 556 F.2d 766 (5th Cir. 1977) ................16

*Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2000) ....................................................20

*Currie Med. Specialties, Inc. v. Bowen*, 136 Cal. App. 3d 774 (1982)...................17

*Cypress Inc. Co. v. Clark*, 144 F.3d 1435 (11th Cir. 1998)............................... 31, 32

*Davis v. Self*, 960 F. Supp. 2d 1276 (N.D. Ala.), *aff'd*, 547 F. App'x 927 (11th Cir. 2013) ..............................................................................................................20

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (11th Cir. 2010) .............................................................................................. 7, 8, 9, 13

*DiMaggio, LLC. v. City, Cnty. of San Francisco*, 187 F. Supp. 2d 1359 (S.D. Fla. 2000) ........................................................................................................15

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) ....................................6

*Doe 3 v. Red Roof Inns, Inc.*, No. 1:19-CV-03843-WMR, 2020 WL 1872333 (N.D. Ga. Apr. 13, 2020) ................................................................................6, 35

*Edwards v. Wallace Cmty. College,* 49 F.3d 1517 (11th Cir.1995) .........................23

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008) ...........................................24

*Estate of Brennan ex rel. Britton v. Church of Scientology Flag Serv. Org., Inc.*, 645 F.3d 1267 (11th Cir. 2011) .................................................................33

*ETS Payphone, Inc. v. TK Industries*, 236 Ga. App. 713 (1999) ...............................9

*Facebook, Inc., Consumer Privacy User Profile Litig.*, 354 F. Supp. 3d 1122 (N.D. Cal. 2019) ...................................................................................................19

*Flowers v. City of Minneapolis*, 558 F.3d 794 (8th Cir. 2009) ...............................25

*Gaines v. Wardynski*, 871 F.3d 1203 (11th Cir. 2017) ..............................................21

*Gast v. Brittain*, 277 Ga. 340 (2003) .......................................................................27

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .............13

*Griffin Indus. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007) ...........................................24

*Hafer v. Melo*, 502 U.S. 21 (1991) ...........................................................................18

*Harris v. Deveaux,* 780 F.2d 911 (11th Cir.1986) ....................................................21

*Hart v. Hodges*, 587 F.3d 1288 (11th Cir. 2009) .............................................. 19, 20

*Henriquez v. El Pais Q'Hubocali.com*, 500 Fed. Appx. 824 (11th Cir. 2012) ........12

*Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672 (2005) ..................................................................................................8

*IOU Central, Inc. v. Embroyolisse USA, Inc.*, No. 1:19-CV-4427-TWT, 2021 WL 2557501 (N.D. Ga. Mar. 22, 2021) ..................................................................10

*Irving v. Bd. of Chosen Freeholders of Burlington Cnty., New Jersey*, 1:18-CV-02845-RWS, 2019 WL 955359 (N.D. Ga. Feb. 26, 2019) ...................................11

*Kentucky v. Graham*, 473 U.S. 159 (1985) ...............................................................17

*King v. Monterey Cnty.*, 21-24434-CIV, 2022 WL 22881917 (S.D. Fla. July 29, 2022) ...................................................................................................................15

*Kornegay v. Beretta USA Corp.*, 614 F. Supp. 3d 1029 (N.D. Ala. 2022) ..............33

*LABMD, Inc. v. Tiversa, Inc.*, 509 Fed. Appx. 842 (11th Cir. 2013) ......................11

*Laguna Beach Sober Living, LLC v. City of Dana Point*, SACV 19-00024 AG
   JDEX, 2020 WL 947946 (C.D. Cal. Jan. 6, 2020) ................................16

*Lake v. Skelton*, 871 F.3d 1340 (11th Cir. 2017) ......................................18

*Lewis v. Clarke*, 581 U.S. 155 (2017) ....................................................18

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) ..............14

*Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990) ........................................5

*Maddox v. Stephens*, 727 F.3d 1109 (11th Cir. 2013) ..............................21

*Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003)......................................18

*Marsalis v. STM Reader, LLC*, No. 1:18-CV-01555-ELR, 2019 WL 13227191
   (N.D. Ga. Jan. 10, 2019) ................................................................11

*Mathis v. Cannon*, 276 Ga. 16 (2002)....................................................27

*Matthews v. Oskou*ei, 369 Ga. App. 568 (2023) ......................................29

*Mendenhall v. Goldsmith*, 59 F.3d 685 (7th Cir. 1995) ............................20

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) ....................30

*Mitchell v. Forsyth,* 472 U.S. 511 (1985)..................................................21

*Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978) ................................23

*Morris v. SSE, Inc.*, 843 F.2d 489 (11th Cir. 1988)....................................5

*Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314  (S.D. Fla.
   2005) ..........................................................................................7

*Mueller v. eBay, Inc.*, 1:20-CV-2581-SCJ, 2021 WL 4814999 (N.D. Ga. Jan. 6,
   2021) ..........................................................................................12

*Murphy v. Morris*, 849 F.2d 1101 (8th Cir. 1988)......................................20

*N. Ins. Co. of New York v. Chatham Cnty., Ga.*, 547 U.S. 189 (2006). ...................18

*Neff v. McGee*, 346 Ga. App. 522 (2018)........................................... 28, 29

*Neighborhood House Ass'n v. Children of the Rainbow Head Start, LLC*, 11-CV-
   1965-JM-POR, 2011 WL 6399467 (S.D. Cal. Dec. 19, 2011) ............................16

*Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270 (11th Cir. 2018)......................26

*Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen., Fla. Dep't of Health*,
   50 F.4th 1126 (11th Cir. 2022) ............................................................26

*Pearson v. Callahan,* 555 U.S. 223 (2009). ............................................21

*People v. Maplebear Inc.*, 81 Cal. App. 5th 923 (2022) ..........................................20

*Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246 (9th Cir. 1987) ...................16

*Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968 (11th Cir. 1986).....6

*Posner v. Essex Ins. Co.*, 178 F.3d 1209 (11th Cir. 1999) .........................................7

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) ...........................32

*RAM Hotel Mgmt., LLC v. Hartford Fire Ins. Co.*, 614 F. Supp. 3d 1342 (N.D. Ga. 2022) ........................................................................................................................2

*Ransom v. Cail*, 4:19-CV-130 (CDL), 2019 WL 7116104 (M.D. Ga. Dec. 23, 2019) .....................................................................................................................12

*Rehberg v. Paulk*, 611 F.3d 828 (11th Cir. 2010) ...................................................31

*Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709 (5th Cir. 1970) .....................................................................................................................15

*Saunders v. Saunders*, No. 1:21-CV-01594-VMC, 2023 WL 2372057 (N.D. Ga. Jan. 31, 2023) .........................................................................................................5

*Schrob v. Catterson*, 948 F.2d 1402 (3d Cir. 1991) ................................................20

*Scott v. Taylor*, 405 F.3d 1251 (11th Cir. 2005) ......................................................17

*Shoe Co. v. Washington,* 326 U.S. 310 (1945) .........................................................13

*Stephens v. Georgia Dep't of Transp.*, 134 F. App'x 320 (11th Cir. 2005)..........6, 34

*Swish Mktg., Inc. v. F.T.C.*, 669 F. Supp. 2d 72 (D.D.C. 2009) ..............................32

*United States v. Moore*, 543 F.3d 891 (7th Cir. 2008) ............................................25

*Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013) ..........................................19

*Versiglio v. Bd. of Dental Examiners of Alabama*, 686 F.3d 1290 (11th Cir. 2012) .......................................................................................................................18

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)...........................................24

*Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018) .............................13

*Walden v. Fiore*, 571 U.S. 277 (2014)......................................................................14

*Walker v. NationsBank of Fla.*, 53 F.3d 1548 (11th Cir. 1995)................................5

*White v. Pauly*, 580 U.S. 73 (2017)..........................................................................22

*Willis v. Univ. Health Servs.,* 993 F.2d 837 (11th Cir.1993) ...................................23

*Worthy v. Eller*, 265 Ga. App. 487 (2004)................................................................12

**Statutes**

28 U.S.C. § 2283 ...............................................................................................33

28 U.S.C. §2201-2022.......................................................................................32

42 U.S.C. §1983 ......................................................................................... *passim*

42 U.S.C. §1988 .................................................................................................5

Cal. Bus. & Prof. §17200 ..................................................................................2

Cal. Bus. & Prof. Code §§17204, 17206 ........................................................19

Cal. Civ. P. §426.10(c) .....................................................................................16

California Code of Civil Procedure §426.30 ............................................. 16, 17

O.C.G.A. §51-5-6.............................................................................................27

O.C.G.A. §51-5-7(1), (4), (7)............................................................ 27, 28, 29, 30

O.C.G.A. §51-5-8.............................................................................................28

O.C.G.A. §9-10-91(1), (2), (3)................................................................. *passim*

O.C.G.A. §9-11-11.1(c)(1)-(4)....................................................................29, 30

Plaintiffs Interactive Communications International, Inc. and InComm Financial Services, Inc. (together, "InComm") filed this federal case alleging defamation and constitutional violations against San Francisco and its City Attorney David Chiu arising from their enforcement of California's consumer protection laws against InComm in San Francisco on behalf of the People of the State of California (the "San Francisco Action"). InComm's claims are frivolous and grounds for dismissal abound.

First, this Court lacks personal jurisdiction over the City and Chiu. Second, even if the Court determines that exercising jurisdiction is appropriate, InComm's claims are compulsory counterclaims to the San Francisco Action. Third, the City and Chiu are entitled to Eleventh Amendment immunity as well as absolute and qualified immunity from suit. Fourth, notwithstanding the jurisdictional, procedural, and immunity bars, InComm fails to state a claim under 42 U.S.C. §1983 for alleged violations of the Equal Protection Clause and Dormant Commerce Clause. Fifth, InComm also falls far short of alleging claims for defamation and stigma-plus defamation under the Due Process Clause against Chiu. Sixth, InComm's independent claim for a declaratory judgment is barred by the Declaratory Judgment Act and its request for injunctive relief is barred by the Anti-Injunction Act. Finally, if InComm clears each of these hurdles, the Court should strike certain immaterial and impertinent allegations from the Complaint.

## I.    FACTUAL ALLEGATIONS

InComm describes itself as "one of the nation's top gift card service providers." Compl., Doc. 1, ¶9. Among the products it offers are "open-loop nonreloadable Vanilla Prepaid Gift Cards ('Vanilla Cards')." *Id.*  InComm is headquartered in Georgia, with principal offices in Atlanta and Columbus. *Id.* ¶¶39-41. InComm collectively refers to the two Plaintiff entities, Interactive Communications International, Inc. ("ICI") and its corporate affiliate InComm Financial Servies, Inc. ("IFS"). *Id.*  ICI is the primary operating entity and is responsible for the physical gift cards; IFS is a licensed money transmitter in 49 states, the District of Columbia, the U.S. Virgin Islands, and Puerto Rico. *Id.* InComm sells its Vanilla Cards in retail stores across the nation, including in California. *Id.* ¶¶21, 52, 57.

On November 9, 2023, the People of the State of California, acting by and through San Francisco City Attorney David Chiu, sued IFS and several banks pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. §17200, *et seq.* ("UCL"), seeking injunctive relief and civil penalties because its inadequate security measures fail to protect unsuspecting purchasers of its Vanilla Cards against fraud.[1]

---

[1] A copy of the complaint in the San Francisco Action, *California v. InComm Finan. Servs., Inc.*, No. CGC-23-610333 (Cal. Super. Ct.), is attached as **Exhibit A** ("SF Compl.").  Courts may consider documents attached to a motion to dismiss provided that the plaintiff refers to the documents in the complaint, the documents are central to the plaintiff's claim, and authenticity is not in dispute. *RAM Hotel Mgmt., LLC v. Hartford Fire Ins. Co.*, 614 F. Supp. 3d 1342, 1345 (N.D. Ga. 2022) (citations omitted). Here, the Complaint is replete with references to the claims and allegations in the San Francisco Action, which is an official pleading whose authenticity is not in dispute.

U.S. consumers load more than half a trillion dollars onto prepaid cards each year, which function as an alternative to cash and a resource to those without access to a credit card or traditional bank account.  Ex. A., SF Compl. ¶1. Hundreds of consumers have reported buying Vanilla Cards only to have those cards rejected for insufficient funds, which they later learn is from "card draining," a practice where someone spends the funds before the purchaser ever has a chance to use the card. *Id.* ¶2. The City's complaint alleges that InComm's inadequate security is the direct cause of this fraud.  *Id.* ¶3.  InComm failed to improve its security on nonreloadable Vanilla Cards, even though it implemented improved security features on its reloadable cards, *id.* ¶4, and failed to reimburse consumers of Vanilla Cards who were the victims of such fraud, either ignoring altogether or denying their refund requests on unlawful or implausible grounds, *id.* ¶5.

On December 14, 2023, InComm unsuccessfully sought to remove the San Francisco Action to federal court, arguing that the City of San Francisco, and not the People of the State of California, was the true party in interest. The district court found no grounds for asserting diversity jurisdiction and remanded the San Francisco Action.[2]

---

[2] *See* Order Granting Motion to Remand, *California v. InComm Fin. Servs., Inc.*, 3:23-cv-06456-WHO (N.D. Cal. Mar. 26, 2024), attached as **Exhibit B** ("Remand Order").

According to InComm, the City and Chiu "avoided removal and deprived InComm of a forum for vindicating its federal rights in California," so "***InComm now seeks to do so in this Court***." Compl. ¶7 (emphasis added). On November 20, 2024, InComm sued the City and Chiu for purported "unconstitutional abuses of power" in filing the San Francisco Action. *Id.* ¶¶1-2. InComm claims that the City filed the San Francisco Action to discriminate against InComm in favor of Blackhawk, a California-based competitor, and to generate revenue to combat the City's budget shortfalls. *Id.* ¶¶119-35. InComm also alleges that, after the City filed the San Francisco Action, Chiu made defamatory statements to the media. *Id.* ¶205. The City's allegations in the San Francisco Action lie at the heart of InComm's Complaint in this case.[3]

InComm seeks recovery from the City and Chiu in his official capacity through 42 U.S.C. §1983 for alleged violations of the Equal Protection Clause (Count I), the Dormant Commerce Clause (Count II), and the Due Process Clause for stigma-plus defamation (Count IV), and from Chiu individually for defamation under Georgia law (Count III). InComm also seeks a declaratory judgment that the City and Chiu's conduct violated its rights (Count V), preliminary and permanent

---

[3] InComm denies that the San Francisco Action is the basis for this suit. Compl. *Id.* ¶3. However, large swaths of the Complaint in this case are dedicated to explaining that claims in the San Francisco Action are untrue and why InComm believes it should not have been sued under the UCL in the San Francisco Action. *See, e.g.*, *id.* ¶¶17-23 (citing factual errors in San Francisco Action complaint); *id.* ¶¶52-100 (extolling its own efforts to secure packaging and reduce fraud); *id.* ¶¶107-17 (complaining about the alleged failure to investigate claims); *id.* ¶¶119-35 (complaining of conflicting allegations).

injunctive relief to stop the City and Chiu from prosecuting the San Francisco

Action, and attorneys' fees pursuant to 42 U.S.C. §1988.

## II.   LEGAL STANDARDS

InComm's Complaint should be dismissed for lack of personal jurisdiction

and failure to state a claim under Rules 12(b)(2) and (6). Certain allegations in

InComm's Complaint should be stricken under Rule 12(f).

### A.   Rule 12(b)(2), Lack of Personal Jurisdiction

A complaint is subject to dismissal if there is a lack of personal jurisdiction

over the defendant. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of

establishing a prima facie case of jurisdiction over the movant, non-resident

defendant. *Saunders v. Saunders*, No. 1:21-CV-01594-VMC, 2023 WL 2372057, at

*1 (N.D. Ga. Jan. 31, 2023) (quoting *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th

Cir. 1988)) (motion to dismiss for lack of personal jurisdiction in which no

evidentiary hearing is held). "A prima facie case is established if the plaintiff

presents enough evidence to withstand a motion for directed verdict." *Madara v.

Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). This requires "substantial evidence ... of

such quality and weight that reasonable and fair-minded persons in the exercise of

impartial judgment might reach different conclusions." *Saunders*, 2023 WL

2372057, at *1 (quoting *Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1554 (11th

Cir. 1995)); *see also id.* (citing *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795

F.2d 968, 972 (11th Cir. 1986) (plaintiff cannot "merely reiterate the factual allegations in the complaint.")).

### B.   Rule 12(b)(6), Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all factual allegations in the complaint as true, but it need not accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### C.   Rule 12(f), Motion to Strike

Pursuant to Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Stephens v. Georgia Dep't of Transp.*, 134 Fed. Appx. 320, 322 (11th Cir. 2005).   "The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Doe 3 v. Red Roof Inns, Inc.*, No. 1:19-CV-03843-WMR, 2020 WL 1872333, at *2 (N.D. Ga. Apr. 13, 2020), *aff'd sub nom. Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021).   The Court has broad discretion in

considering a motion to strike under Rule 12(f). *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1317-18 (S.D. Fla. 2005).

## III.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over the Defendants.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). Courts apply a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.'" *Id.* at 1257-58.[4]  "A court without personal jurisdiction is powerless to take further action."  *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

Here, InComm fails to allege any facts showing that the City and Chiu can be brought into court under the Georgia long arm statute. O.C.G.A. §9-10-91(1), (3). InComm's defamation-related claims against Chiu in his official and personal capacities also fail because the Georgia long arm statute unequivocally excludes any cause of action predicated on defamation. *Id.* §9-10-91(2).  Finally, even if InComm

---

[4] Even though the *Diamond* analysis occurred in the context of a diversity action and this is a federal question case, the same two-step inquiry applies. "Because 42 U.S.C. §1983 lacks a provision for service of process, federal courts adopt state jurisdictional statutes to reach out-of-state defendants." *Berry College, Inc. v. Rhoda*, 4:13-CV-0115-HLM, 2013 WL 12109374, at *4 n.1 (N.D. Ga. June 12, 2013) (citation omitted) (applying Georgia long-arm statute in §1983 action under Dormant Commerce Clause).

could show the application of the Georgia long arm statute, due process considerations prevent this Court from exercising personal jurisdiction here.

## 1.    Georgia's Long Arm Statute Does Not Authorize Personal Jurisdiction Over the Defendants.

Georgia's long arm statute permits the exercise of personal jurisdiction over a nonresident who (1) transacts business in Georgia, (2) commits a tort in Georgia, except defamation, or (3) commits an act out of state that causes injury in Georgia and regularly conducts or solicits business in, or derives substantial revenue from, Georgia. O.C.G.A. §9-10-91(1), (2), (3). When deciding whether personal jurisdiction exists, the Court "must interpret and apply Georgia's long-arm statute in the same way as would the Georgia Supreme Court." *Diamond*, 593 F.3d at 1258. The Georgia Supreme Court has given the long-arm statute a "literal construction" and rejected limitations that are inconsistent with such a reading. *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 673-76 (2005). The court must "find that at least one prong of the long-arm statute is satisfied." *Diamond*, 593 F.3d at 1260.

### a.  InComm Does Not Plead Facts to Establish Jurisdiction Under O.C.G.A. §9-10-91.

InComm contends that jurisdiction is proper under the first and third prongs of the long-arm statute. Compl. ¶47.  But InComm does not—because it cannot— allege facts sufficient to establish jurisdiction under either subsection.

*Prong (1):* The "transacts any business" provision in O.C.G.A. §9-10-91(1) grants personal jurisdiction over a non-resident defendant only if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *Aero Toy Store, LLC v. Grieves,* 279 Ga. App. 515, 517-18 (2006). Courts have further explained that "literally transacting business within Georgia" is a precondition of jurisdiction under this prong. *Diamond*, 593 F.3d at 1261.

This standard cannot be met here.  There are no allegations in the Complaint that the City or Chiu transacted any business at all in Georgia. The sole allegation in support of jurisdiction is that Defendants filed a lawsuit in California against a Georgia company.   Compl. ¶¶47-48. Georgia courts have found much more extensive business contacts insufficient to support jurisdiction under prong (1). In *ETS Payphone, Inc. v. TK Industries*, 236 Ga. App. 713, 714 (1999), for example, the defendant corporation's Chief Executive Officer came to Georgia and expressed an interest in entering into a contract with the plaintiff regarding the acquisition of a payphone route. They then negotiated a letter of intent concerning the purchase. When the deal fell through, the Georgia company sued the non-resident defendant in Georgia state court. *Id.* The Court of Appeals concluded that the trial court had no

jurisdiction over the defendant because neither the CEO's single visit to Georgia nor the virtual negotiations were sufficient to establish that the defendant had engaged in purposeful business activity in the state. *Id*. at 715.  Similarly, in *IOU Central, Inc. v. Embroyolisse USA, Inc.*, No. 1:19-CV-4427-TWT, 2021 WL 2557501, at *4 (N.D. Ga. Mar. 22, 2021), the court held that an attorney's representation of a client in Georgia courts was insufficient to satisfy the "transacts any business" standard.

If coming to Georgia as part of a business negotiation that culminates in a contractual business relationship with a Georgia company and representing clients before the Georgia courts are insufficient to support jurisdiction under prong (1), the mere act of filing a lawsuit in another state against a Georgia company cannot do so either.  This is particularly true where, as here, the Georgia lawsuit challenges an action taken by a government entity to enforce its state's laws. This court analyzed a similar situation in *Berry College, Inc.*, 2013 WL 12109374. There, a Georgia college sued the executive director and assistant executive director of the Tennessee Higher Education Commission alleging that their efforts to enforce the Tennessee Postsecondary Authorization Act against the college were unconstitutional. The court found that the defendants had not transacted business within Georgia for the purposes of prong (1), noting that all of defendants' actions were taken "in connection with their regulatory responsibilities under the Act." *Id.* at *6 ("The Court is hard-pressed to conclude that the Georgia courts would find that actions taken

solely in connection with enforcing a foreign state's laws or regulations constitute transacting business within Georgia."); *see also Irving v. Bd. of Chosen Freeholders of Burlington Cnty., New Jersey*, 1:18-CV-02845-RWS, 2019 WL 955359, at *3 (N.D. Ga. Feb. 26, 2019).

Equally insufficient are InComm's allegations that the City and Chiu have or will need to make calls to or send emails to Georgia, or have already done so. Compl. ¶48. To the extent any of this could conceivably be considered "transacting business," it is not taking place in Georgia. "For purposes of personal jurisdiction under Georgia's long-arm statute," the "defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email," *i.e.*, in California.[5] *See LABMD, Inc. v. Tiversa, Inc.*, 509 Fed. Appx. 842, 844 (11th Cir. 2013).

**Prong (3):** To exercise personal jurisdiction over a nonresident who commits a tortious injury in Georgia caused by an act occurring outside of Georgia under O.C.G.A. §9-10-91(3), the plaintiff similarly must show that the tortfeasor defendant "regularly" conducted or solicited business in Georgia, or derived "substantial revenue from goods used or consumed or services rendered" in Georgia. *Henriquez*

---

[5] InComm's allegations regarding statements on the internet viewable in Georgia and alleged outreaches into Georgia—which includes its defamation allegations—fare no better. Compl. ¶¶50, 206-07, 209-11, 214. A defendant cannot be brought into a Georgia court simply because alleged defamatory statements published outside of Georgia may be viewable in Georgia. *See Henriquez*, 500 Fed. Appx. at 829; *Marsalis v. STM Reader, LLC*, No. 1:18-CV-01555-ELR, 2019 WL 13227191, at *3 (N.D. Ga. Jan. 10, 2019).

*v. El Pais Q'Hubocali.com*, 500 Fed. Appx. 824, 829 (11th Cir. 2012).  InComm

makes neither showing. Indeed, there are no allegations at all that the City or Chiu

"regularly" conducts business in Georgia or has derived any revenue at all, let alone

"substantial revenue," from goods or services in the state.

In short, every single act alleged in the Complaint occurred in California,

within the context of the San Francisco Action. Not a single alleged act in the

Complaint occurred in Georgia. Therefore, InComm does not and cannot establish

personal jurisdiction over the City and Chiu under prongs (1) or (3) of the Georgia

long arm statute.

### b.    The Georgia Long Arm Statute Excludes Jurisdiction for Defamation Claims.

The Georgia long arm statute expressly prohibits claims against nonresidents

predicated on defamation. O.C.G.A. §9-10-91(2).   Subsection (2) "is clear,

unequivocal and unambiguous in mandating the exclusion of an action predicated

on defamation." *Worthy v. Eller*, 265 Ga. App. 487, 488 (2004).[6] Thus, Georgia law

precludes InComm's defamation claim against Chiu.

### 2.    Due Process Considerations Prohibit the Exercise of Personal Jurisdiction Over Defendants.

Even if the Court determined that InComm satisfied a subsection of the

Georgia long arm statute, exercising jurisdiction over the City and Chiu would

---

[6] *See also Mueller v. eBay, Inc.*, 1:20-CV-2581-SCJ, 2021 WL 4814999, at *2-3 (N.D. Ga. Jan. 6, 2021); *Ransom v. Cail*, 4:19-CV-130 (CDL), 2019 WL 7116104, at *1 (M.D. Ga. Dec. 23, 2019).

violate due process. Due process requires that (1) a nonresident defendant has certain minimum contacts with the forum state and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Diamond*, 593 F.3d at 1267 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

First, InComm fails to allege constitutionally acceptable minimum contacts between the City, Chiu, and Georgia. The minimum-contacts inquiry "ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated with the state." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citation omitted). A plaintiff can satisfy the minimum contacts requirement by establishing either general or specific jurisdiction.  InComm establishes neither.

General jurisdiction may be exercised only when a defendant's affiliations with the state are so "'continuous and systematic' as to render him essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted).  Specific personal jurisdiction requires "a connection between the forum and the specific claims at issue." *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 265 (2017). The Eleventh Circuit applies a three-part due process test in specific jurisdiction cases:

(1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.*

Here, there is no doubt that San Francisco and its City Attorney have no systematic contacts with Georgia and did not purposefully avail themselves of the privilege of conducting activities in Georgia. It is also abundantly clear that InComm's claims arise solely out of or relate to the San Francisco Action. InComm's only "hook" to assert jurisdiction over the City and Chiu is merely that *InComm* is headquartered in Georgia. Hauling San Francisco and its City Attorney to a Georgia court on this basis is plainly unconstitutional. "The plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction." *Id.* at 286. Therefore, InComm fails to plead general jurisdiction and fails to meet the first two elements of the specific jurisdiction test.

Second, exercising jurisdiction over the City and Chiu would offend traditional notions of fair play and substantial justice (which is also the third element of the specific jurisdiction test). Georgia has no interest whatsoever in adjudicating questions under the California UCL, how the UCL is enforced, what the City does with the proceeds from UCL actions, or whether the City's decision to sue InComm was appropriate. Nor should a California municipality and its city attorney be forced to litigate in Georgia the same factual and legal issues already pending in a California court.[7] The law clearly forbids such a result.

Because InComm fails to establish jurisdiction under the Georgia long arm statute and exercising jurisdiction here would violate due process, the Court should dismiss the Complaint in its entirety, with prejudice.

### B. InComm's Claims Should Be Dismissed as Compulsory Counterclaims.

The Court should also dismiss the entire Complaint because InComm's claims should have been brought as compulsory counterclaims in the earlier San Francisco Action. Fed. R. Civ. P. 13(a). The compulsory counterclaim rule avoids "duplication of effort and time by the parties and the courts." *Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.,* 426 F.2d 709, 715 (5th Cir. 1970).[8] Where the earlier case is

---

[7] *See King v. Monterey Cnty.*, 21-24434-CIV, 2022 WL 22881917, at *1-2 (S.D. Fla. July 29, 2022) (dismissing case on similar grounds); *DiMaggio, LLC. v. City, Cnty. of San Francisco*, 187 F. Supp. 2d 1359, 1371 (S.D. Fla. 2000) (same).

[8] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

in state court, that state's law determines whether a later claim should have been asserted as a compulsory counterclaim. *Cleckner v. Republic Van & Storage Co.*, 556 F.2d 766, 768-69 (5th Cir. 1977). This same rule applies whether the later federal action is based on diversity or federal question jurisdiction. *Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1509 (11th Cir. 1985). Accordingly, this Court should apply California's compulsory counterclaim law.

California Code of Civil Procedure §426.30 governs whether a federal claim should have been asserted as a compulsory counterclaim in an earlier-filed state court action. *Laguna Beach Sober Living, LLC v. City of Dana Point*, SACV 19-00024 AG JDEX, 2020 WL 947946, at *2 (C.D. Cal. Jan. 6, 2020) (citing *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987)). Pursuant to Cal. Civ. P. §426.30(a), a party that fails to "allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff [] may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded."[9]  A claim is "related" if it "arises out of the same transaction, occurrence, or series of transactions or occurrences" as the claims asserted in the earlier-filed complaint. Cal. Civ. P. §426.10(c). In determining

---

[9] A cross-complaint in California is the equivalent of a counterclaim in federal court.  Section 426.30(b) states that the section does not apply if "[t]he person who failed to plead the cause of action did not file an answer to the complaint against him." Although InComm has not yet filed an answer in the San Francisco Action, §426.30(a) still applies where the earlier state court has "progressed more slowly than" the latter federal action. *Neighborhood House Ass'n v. Children of the Rainbow Head Start, LLC*, 11-CV-1965-JM-POR, 2011 WL 6399467, at *4 (S.D. Cal. Dec. 19, 2011).

relatedness, an "expansive logical relation test" applies. *Currie Med. Specialties, Inc. v. Bowen*, 136 Cal. App. 3d 774, 777 (1982). Further, §426.30 should be "liberally construed" to "avoid[] a multiplicity of actions" through "piecemeal" litigation. *See Align Tech., Inc. v. Tran*, 179 Cal. App. 4th 949, 960 (2009).

Here, InComm's lawsuit clearly arises out of the same issues pending in the San Francisco Action. Nearly every factual allegation and legal claim brought in this lawsuit stems from InComm's specific factual disagreements with the complaint in the San Francisco Action, the Defendants' motivations for bringing that action, and the legality of the California UCL. *See* n.3, *supra*. Because InComm's claims are clearly compulsory counterclaims, the Court should dismiss this case.

### C.    The City and Chiu Are Immune from Suit.

InComm seeks recovery from the City and Chiu in his official capacity pursuant to 42 U.S.C. §1983 in Counts I, II, and IV.  Defendants are immune from suit under the Eleventh Amendment and the doctrines of absolute prosecutorial immunity and qualified immunity.[10]

---

[10] It is well-settled that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[P]ersonal defenses are generally unavailable in official capacity suits because such suits are treated as suits against the underlying entity. *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005) (citing *Graham*, 473 U.S. at 166–67).  However, official capacity suits "for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment." *Id.* (citing *Graham*, 473 U.S. at 167 n. 14).  Here, to the extent that InComm's request for declaratory and injunctive relief against Chiu in his official capacity seeks to preclude Chiu from prosecuting the San Francisco Act, Chiu is entitled to raise both absolute and qualified immunity.

### 1.    Defendants Have Eleventh Amendment Immunity as State of California Actors.

"Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). The determination of whether a defendant is an "arm of the Sate" centers on "the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* It matters not whether the defendant is labeled a "state office" or "state official."[11] *Id.* The Eleventh Circuit considers four factors to determine whether an entity is an "arm of the State" in carrying out a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. In this circuit, "the most important factor is how the entity has been treated by the state courts." *Lake v. Skelton*, 871 F.3d 1340, 1348 (11th Cir. 2017); *see also Versiglio v. Bd. of Dental Examiners of Alabama*, 686 F.3d 1290, 1292 (11th Cir. 2012). "In the context of lawsuits against state and federal employees or entities, courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 581 U.S. 155, 161-62 (2017) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

---

[11] A municipality generally is not afforded sovereign immunity "unless it was acting as an arm of the State, as delineated by [Supreme Court] precedents." *N. Ins. Co. of New York v. Chatham Cnty., Ga.*, 547 U.S. 189, 194 (2006).

The express language of the UCL provides a basis for sovereign immunity – the UCL empowers a **city attorney** to bring actions "in the name of the people of the State of California." Cal. Bus. & Prof. Code §§17204, 17206. The real party in interest is the State of California.[12] Moreover, "county prosecutors, when acting to enforce the state's laws, are state officials for Eleventh Amendment purposes," and there is "no basis for distinguishing between civil and criminal enforcement of state law" for Eleventh Amendment immunity. *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 354 F. Supp. 3d 1122, 1134 n.10 (N.D. Cal. 2019) (citing *Vasquez v. Rackauckas*, 734 F.3d 1025, 1041 (9th Cir. 2013)). That alone is enough to invoke sovereign immunity, which shields Defendants from liability for Counts I, II, and IV.

### 2.    City Attorney Chiu Enjoys Absolute Immunity.

The Supreme Court has long recognized that the common law gives prosecutors absolute immunity in §1983 actions "stemming from the prosecutor's function as advocate," which "extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009). Prosecutorial immunity extends to civil prosecutors who act on behalf of the State. *Id.* at 1296; *see also Davis v. Self*, 960 F. Supp. 2d 1276, 1306 (N.D. Ala.),

---

[12] Indeed, in granting remand, Judge Orrick ruled that California is the real party in interest in the San Francisco Action, which deprived the California federal district court of jurisdiction. *See* Remand Order, Ex. B at 8, 9. In so doing, he relied on the statutory language in the UCL and decisions from both the Ninth Circuit and the California Supreme Court. *Id.* at 4-9.

*aff'd*, 547 Fed. Appx. 927 (11th Cir. 2013) (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)). Courts apply a functional approach, examining "the nature of the function performed, not the identity of the person who performed it." *Hart*, 587 F.3d at 1294-95.

The UCL itself confirms the application of absolute immunity.  The statute expressly grants city attorneys authority to bring law enforcement actions. *People v. Maplebear Inc.*, 81 Cal. App. 5th 923, 937, 940 (2022) (city attorney bringing UCL claim is "acting in its capacity as a public prosecutor exercising its traditional police powers").  The fact that Defendants initiated the underlying UCL action as a civil proceeding does not change the analysis.  *Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, 2022 WL 4375364, at *14 (11th Cir. Sept. 22, 2022) (holding a §1983 suit against prosecutors for the "initiation, continuation, and procurement" of civil racketeering action was subject to absolute immunity).[13]  InComm's unsupported allegation that the City Attorney had ulterior motives in filing suit is equally

---

[13] Other Circuit Courts agree.  *See Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir. 1991) (relying on *Butz*, 438 U.S. 478, "absolute immunity is extended to officials when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action"); *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) (finding that prosecutors enjoy absolute immunity when pursuing a civil action "as long as the prosecutors were functioning in an enforcement role and acting as advocates for the state in initiating and prosecuting judicial proceedings"); *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995) (applying absolute immunity to prosecutor who filed civil RICO complaint, noting that "the alleged misconduct here arose in the context of a civil proceeding with a law enforcement purpose does not render absolute immunity inappropriate"); *Murphy v. Morris*, 849 F.2d 1101, 1105 (8th Cir. 1988) (attorney general defending state officials in prisoner civil rights litigation enjoys absolute immunity).

inapposite – a prosecutor's motivations are of no import. *Id.* at *7 (citations omitted). InComm's §1983 claims against Chiu in Counts I, II, and IV must be dismissed because Chiu enjoys absolute prosecutorial immunity.[14]

### 3.    City Attorney Chiu Enjoys Qualified Immunity.

City Attorney Chiu is also entitled to qualified immunity. "Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Gaines v. Wardynski*, 871 F.3d 1203, 1206 (11th Cir. 2017). The defendant must first establish that he was acting within the scope of his discretionary authority. *Id.* at 1208 (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)). The burden then shifts to the plaintiff to show: (1) that the defendant violated its constitutional rights, and (2) that, at the time of the violation, those rights were "clearly established ... in light of the specific context of the case, not as a broad general proposition."[15] *Id.* (citations omitted). To assess whether the relevant conduct violated clearly established law, the inquiry is whether there was "fair warning" – from a bright line rule particularized to the facts of the

---

[14] It is crucial to recognize and apply absolute immunity now, at the motion to dismiss stage. *Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1010 (11th Cir. 1992) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) ("absolute immunity ... is effectively lost if a case is erroneously permitted to go to trial"); *Harris v. Deveaux,* 780 F.2d 911, 913 (11th Cir. 1986) ("Absolute immunity is meant to protect not only from liability, but from going to trial at all.").

[15] Courts should "exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

case – at the time the government official engaged in the alleged conduct. *Id.* at 1209-10; *White v. Pauly*, 580 U.S. 73, 79 (2017).

Chiu was acting within the scope of his discretionary authority when he investigated and initiated the San Francisco Action. As set forth above, the UCL expressly grants such authority, and InComm admits as much. Compl. ¶¶138-44. Thus, the burden shifts to InComm to show that Chiu's initiation of the San Francisco Action violated its clearly established constitutional rights, which it fails to do. As set forth in greater detail below, InComm's §1983 claims alleging violations of the Equal Protection Clause, Dormant Commerce Clause, and Due Process Clause all fail. That alone ends the inquiry. But even if InComm could make the requisite showing of a constitutional violation, there is no case law that would provide fair warning with a bright line rule about the conduct at issue – investigating and bringing the San Francisco Action. Indeed, the opposite is true. Courts have routinely dismissed claims against prosecutors predicated on the investigation and initiation of an enforcement action. The court should do so here as well.

### D.    InComm's §1983 Claims Fail under *Monell*.

A plaintiff seeking to prevail on a claim under 42 U.S.C. §1983 must establish that: (1) a person deprived him of a right secured under the Constitution or a federal law, and (2) the deprivation occurred under color of state law. *Arrington v. Cobb Cnty.,* 139 F.3d 865, 872 (11th Cir. 1998) (*citing Willis v. Univ. Health Servs.,* 993

F.2d 837, 840 (11th Cir. 1993)); *Edwards v. Wallace Cmty. College,* 49 F.3d 1517, 1522 (11th Cir. 1995). Moreover, to hold a local governmental entity liable under §1983, a plaintiff must further show that the deprivation of rights occurred pursuant to an official "custom" or "policy" of that municipality or county. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). The plaintiff must identify deliberate conduct and a direct causal link between the municipal action and the deprivation of federal rights. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997) (citations omitted). Importantly, the plaintiff cannot state a claim for relief against a governmental entity under §1983 merely by pointing to an isolated incident. *See Monell*, 436 U.S. at 694.

InComm asserts that the City has a policy of using consumer protection litigation against out-of-state corporations to raise money for the City and the City Attorney's Office. *See, e.g.*, Compl. ¶¶7, 235, 244, 247. InComm pleads no *facts* to show the City has a policy of using UCL litigation and recoveries to cover budget shortfalls. InComm likewise pleads no *facts* to show that the City's budgeting process or the City Attorney's internal resource allocation decisions deprive it of a constitutional right. Indeed, InComm fails to identify a single instance where the City, pursuant to this alleged policy, went after an out-of-state corporation to raise revenue other than its own claim. An isolated incident is not enough to satisfy *Monell*, which is yet another basis to dismiss Counts I, II, and IV.

### E.    InComm Fails to Allege a §1983 "Class of One" Equal Protection Claim.

A "class of one" claim "involves a plaintiff who 'alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*)).  InComm's class-of-one claim is based entirely on the fact that the City sued it for violations of the UCL, but did not sue other open-loop gift card providers, including its competitor Blackhawk. Compl. ¶¶229-30.

As an initial matter, the class-of-one theory is inapplicable where, as here, "an agency's decision was a discretionary one, of a 'complex and multidimensional' character, for which it needed to 'be able to take into account all of the relevant facts and circumstances of the individual cases before it.'" *Barati v. Fla. Att'y Gen.*, No. 18-13998, 2021 WL 2911729, at *5 (11th Cir. July 12, 2021) (quoting *Carruth v. Bentley*, 942 F.3d 1047, 1058 (11th Cir. 2019)).  On this basis, the Supreme Court has held the class-of-one theory did not apply to public employment decisions. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008) (reasoning that the employment context "by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments"). And the Eleventh Circuit similarly has found the class-of-one theory inapplicable to a state agency's action of placing a credit union in conservatorship (*Carruth*, 942 F.3d at 1058) and to the state

24

Attorney General's decision to dismiss a *qui tam* lawsuit (*Barati*, 2021 WL 2911729, at *5).  The same reasoning applies where, as here, a government entity has broad discretion to decide when and against whom to bring enforcement actions.[16]

Furthermore, even if the class-of-one theory were applicable in this context, InComm's claim would still fail. "All that is necessary is that there be some conceivable reason supporting the government action." *Barati*, 2021 WL 2911729, at *5.  InComm alleges that "it is a market leader in prepaid gift cards," Compl. ¶14; is "one of the top U.S. providers of "open-loop" gift cards, *id.* ¶55; its Vanilla Cards are "sold in retailers across the nation," *id.* ¶52, including the pharmacy down the street from San Francisco City Hall, *id.* ¶21; and it "enjoys placement of Vanilla Cards at many top national retailers ...including Safeway," *id.* ¶57. These facts are not alleged as to Blackhawk and, when coupled with InComm's security failures, are more than sufficient to satisfy the rational basis test. Additionally, InComm was the subject of hundreds of consumer complaints about its card security and refusal to provide refunds to injured consumers, which are central to the San Francisco Action against InComm and further demonstrate a rational basis for suit. *See* Ex. A., SF Compl. ¶¶1-5. Count I should be dismissed.

---

[16] *See United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) ("[T]he discretion conferred on prosecutors in choosing whom and how to prosecute is flatly inconsistent with a presumption of uniform treatment. Therefore, a class-of-one equal protection challenge, at least where premised solely on arbitrariness/irrationality, is just as much a 'poor fit' in the prosecutorial discretion context as in the public employment context."); cf. *Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009) (police officer's investigative decisions not subject to a class-of-one equal protection claim).

F.    **In Comm Fails to State a Dormant Commerce Clause Claim.**

The Dormant Commerce Clause serves to prevent "economic protectionism" from "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275 (11th Cir. 2018). Laws that discriminate against or unduly burden interstate commerce run afoul of the Dormant Commerce Clause. *Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen., Fla. Dep't of Health*, 50 F.4th 1126, 1141 (11th Cir. 2022).

Here, InComm falls far short of alleging a Dormant Commerce Clause violation. InComm does not point to any law, regulation, or action which on its face discriminates against interstate commerce. Nor does InComm allege any facts showing even incidental effects on interstate commerce from the City or Chiu's prosecutorial decisions. Instead, InComm conclusorily alleges that, because the City did not sue California-based Blackhawk, the City and Chiu are substantially impeding interstate commerce. InComm cannot point to any case holding that the dormant Commerce Clause is violated simply because a municipality has filed suit against one company and not another. The Court should dismiss Count II.

G.    **InComm Fails to Allege Defamation and Stigma-Plus Claims.**

InComm asserts a claim for defamation against Chiu in his personal capacity (Count III) and for "stigma-plus" defamation in his official capacity (Count IV). Both claims center on statements Chiu made about the San Francisco Action after it

was filed, and both claims fail. Not only does InComm fail to allege a single defamatory statement, the speech at issue is privileged under Georgia law, and there is no constitutional injury.

### 1.    Georgia Law Bars InComm's Defamation Claim.

To state a claim for defamation under Georgia law, a plaintiff must allege "(1) a false and defamatory statement concerning the plaintiff; (2) an *unprivileged* communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Mathis v. Cannon*, 276 Ga. 16, 21 (2002) (emphasis added). A statement is not actionable as defamation when it conveys a pure opinion, *Gast v. Brittain*, 277 Ga. 340, 341 (2003), or a true statement of fact, O.C.G.A. §51-5-6. Georgia law deems certain categories of speech privileged, including:

> (1) Statements made in good faith in the performance of a public duty; […]
>
> (4) Statements made in good faith as part of an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of Code Section 9-11-11.1; [and]
>
> (7) Comments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith[.].

O.C.G.A. §51-5-7(1), (4), (7). These privileges are conditional, rather than absolute, and "can be waived if the privilege is used merely as a cloak for venting private

malice." *Neff v. McGee*, 346 Ga. App. 522, 526 (2018). Georgia recognizes an absolute privilege for all allegations contained in pleadings filed in a court of competent jurisdiction. O.C.G.A. §51-5-8.

InComm's defamation claims against Chiu in his personal capacity fail for several reasons.

First, several of the challenged statements are simply not false and defamatory. For example, there is nothing false and defamatory about reporting the filing of a lawsuit to enforce a state law or explaining how "card draining" works. Compl. ¶¶206-07, 209-11. Likewise, labeling the fraud as "egregious" based on hundreds of consumer complaints and telling consumers that they can avoid fraud by not purchasing Vanilla Cards is not false simply because, as InComm alleges, the comments do not account for the size of InComm's market share or explain other steps consumers can take to protect against fraud. *Id.*¶¶ 219-23.

Second, the statements are absolutely privileged under O.C.G.A. §51-5-8. Every challenged statement derives from or quotes verbatim the allegations set forth in the San Francisco Action complaint, which cannot form the basis of a claim for defamation. These statements go no further, and indeed include far less than, what is pled in that complaint.

Third, even if not absolutely privileged, Chiu's statements are conditionally privileged under O.C.G.A. §51-5-7(1) and (7). Chiu made the statements at issue

about the San Francisco Action in good faith pursuant to his public duty as City Attorney. Moreover, the statements were fair comments describing the circumstances of a case he filed on behalf of the People of the State of California. *See Neff*, 346 Ga. App. at 526-28. The November 20, 2023 press release was posted on the City Attorney Office's official government website. Compl. ¶¶205-06. Chiu's X, Facebook, and campaign website posts arise out of or relate to Chiu's position as City Attorney and contain no personal statements. *Id.* ¶¶206-10. Each television interview clearly identifies Chiu as the City Attorney commenting about the San Francisco Action. *Id.* ¶¶209, 211, 214.

Chiu's statements are also conditionally privileged under Georgia's anti-SLAPP[17] statute, which protects acts in furtherance of the "right of petition or free speech" under the U.S. or Georgia constitutions "in connection with an issue of public interest or concern," including written or oral statements (1) made in an official judicial proceeding, (2) in connection with an issue under review by a judicial body, or (3) in a public forum in connection with an issue of public interest or concern, and (4) any related conduct. O.C.G.A. §51-5-7(4); O.C.G.A. §9-11-11.1(c)(1)-(4).[18]  Here, the City and Chiu were clearly acting within their free speech

---

[17] A "strategic lawsuit against public participation" (SLAPP action) is filed with the intent to silence and intimidate opponents or critics. *Neff*, 346 Ga. App. at 524; *see also Matthews v. Oskou*ei, 369 Ga. App. 568, 570 (2023).

[18] The Eleventh Circuit's holding in *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018) does not prohibit the substantive application of Georgia's anti-SLAPP law in this case. In *Carbone*, the Eleventh Circuit held that the motion to strike procedures in the law conflict with Federal Rules of Civil

rights regarding a matter of public concern: enforcement of California's consumer protection laws and gift card fraud, which affects scores of California consumers each year. The statements were made in connection with an issue under consideration or review by a judicial body: the San Francisco Action.

Notably, InComm makes no attempt to identify which statements it alleges were made with actual malice. Instead, it conclusorily pleads that the City Attorney had no basis for his statements that InComm's Vanilla Cards have inadequate security measures, therefore the claims were made with malice. *See* Compl. ¶¶218, 252. InComm disagrees with the City's claims against it in the San Francisco Action, but actual malice requires that InComm plead *facts* demonstrating a reckless disregard for the truth or falsity of the statements at issue. The inquiry is subjective; InComm must plausibly allege that Chiu "actually entertained serious doubts ... or was highly aware that the account was probably false." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702-03 (11th Cir. 2016). InComm's claim that the City Attorney failed to sufficiently investigate the allegations in the San Francisco Action does not demonstrate actual malice. *Id.* at 703 ("a failure to investigate, standing on its own, does not indicate the presence of actual malice"). InComm pleads nothing to

---

Procedure 8, 12, and 56, and therefore could not be implemented in federal courts. *Id.* at 1349. However, "[t]he public interest privilege in O.C.G.A. §9-11-11.1(c), as applied through O.C.G.A. §51-5-7(4), does not directly conflict with a Federal Rule of Civil Procedure and, thus, is *substantive* and can apply in federal court even though the anti-SLAPP *procedure* does not apply in federal court." *Amin v. NBCUniversal Media, LLC*, 5:21-CV-56, 2022 WL 16964770, at *7 (S.D. Ga. Nov. 16, 2022) (emphasis in original).

overcome these conditional privileges, and Count III should be dismissed in its entirety.

### 2. InComm Pleads No Constitutional Violation to Support Its Stigma-Plus Claim.

Just as InComm's defamation claim fails, so does its "stigma-plus" defamation claim. The Eleventh Circuit has held that "[a] tort claim, such as [a] defamation allegation. . . does not give rise to a §1983 due process claim unless there is an additional constitutional injury alleged." *Rehberg v. Paulk*, 611 F.3d 828, 851 (11th Cir. 2010). A plaintiff may only recover damages to reputation under §1983 "if those damages were incurred as a result of government action significantly altering the plaintiff's constitutionally recognized legal rights." *Cypress Inc. Co. v. Clark*, 144 F.3d 1435, 1438 (11th Cir. 1998). "This doctrine is known as the 'stigma-plus' test and requires the plaintiff to show both a valid defamation claim (the stigma) and 'the violation of some more tangible interest' (the plus)." *Rehberg*, 611 F.3d at 851 (internal citation omitted).

Here, not only has InComm failed to demonstrate that Chiu's statements about the San Francisco Action constitute defamation, it fails to demonstrate the violation of any recognized property or liberty interest. InComm appears to allege a due process violation. *See* Compl. ¶¶257-59, 264. At most, these allegations establish that InComm was sued and has to defend itself. Being the defendant in a civil enforcement suit does not amount to the deprivation of any property or liberty

interest. To so hold would constitutionalize civil code enforcement, which is precisely what a stigma-plus claim cannot do. *Cypress*, 144 F.3d at 1437. As with its other claims, InComm *concludes* that its rights were violated with no actual *facts* or cognizable legal claim.

### H.    InComm Cannot Pursue an Independent Claim for Declaratory Judgment.

InComm seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201-2022, in the form of a declaration that Defendants violated it rights under the Equal Protection Clause, Dormant Commerce Clause, and Due Process Clause. Compl. ¶264. The Declaratory Judgment Act "provides that in a case of actual controversy a competent court may 'declare the rights and other legal relations' of a party 'whether or not further relief is or could be sought.'" *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952). It cannot be used to "frustrate action by a state agency." *Id.* at 247. Yet that is exactly what InComm seeks to do here – interfere with the San Francisco Action and frustrate the State of California's interest in enforcing its own UCL.  Its claim in Count V for relief under the Declaratory Judgment Act fails for this reason alone.

Similarly, the Declaratory Judgment Act cannot be used to assert an anticipatory defense. *Swish Mktg., Inc. v. F.T.C.*, 669 F. Supp. 2d 72, 79-80 (D.D.C. 2009). It is clear from InComm's Complaint here, much of which is devoted to countering, disproving, or diminishing the City's allegations, that it is using this case

to defend the claims made against it in the San Francisco Action. *See* Compl. ¶7. Likewise, the Declaratory Judgment Act does not supply an independent cause of action, and fails in the absence of a separate claim under a source of law that creates the rights and legal relations the party wants the court to declare. *See Kornegay v. Beretta USA Corp.*, 614 F. Supp. 3d 1029, 1037 (N.D. Ala. 2022). All of InComm's separate claims fail for the reasons set forth above. Count V should be dismissed.

## I.    The Anti-Injunction Act Prohibits the Requested Injunctive Relief.

InComm's request to enjoin the City and Chiu from pursuing the San Francisco Action (Compl. ¶5, Prayer for Relief subsection (b)) violates the Anti-Injunction Act, 28 U.S.C. §2283. The Anti-Injunction Act prohibits federal courts from enjoining state court actions except in three narrow circumstances. *Estate of Brennan ex rel. Britton v. Church of Scientology Flag Serv. Org., Inc.*, 645 F.3d 1267, 1273 (11th Cir. 2011). Under the Anti-Injunction Act, an injunction halting a state court proceeding is inappropriate, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. §2283. Here, InComm does not point to any express authorization from any Act of Congress, and there is no federal court judgment to protect. Furthermore, this Court does not need to halt the San Francisco Action proceedings to determine that it cannot exercise personal jurisdiction in this case. The requested relief is improper and should be dismissed.

**J.      InComm's Immaterial, Impertinent Allegations Should be Stricken.**

InComm's Complaint includes allegations that contain "immaterial, impertinent, or scandalous matter," which this Court should strike under Rule 12(f). InComm concludes that the City Attorney's Office harbors "favoritism" for its competitor Blackhawk based on the following unrelated facts: Blackhawk is headquartered in California; the law firm Cooley, LLP represents the City Attorney's office in a trademark case; Cooley represented Blackhawk in a patent dispute with InComm that ended in 2023; a current attorney employed by the City Attorney's office previously worked at Cooley; while at Cooley, that attorney worked with the partner who represented Blackhawk in the patent case. *See* Compl. ¶¶187-96.

Although InComm denies accusing this attorney and the Office of "ethical breaches," *id.* ¶193, that is exactly what its allegations are intended to and in fact do. InComm claims this information "reinforce[s] the appearance of an alliance" between the City Attorney's Office and Blackhawk, *id.* ¶194, which is rank speculation.[19] These allegations have no bearing on InComm's claims, and instead are made solely to prejudice the City and Chiu and confuse the facts—at the expense of a civil servant and a bystander law firm. *See Stephens v. Georgia Dep't of Transp.*, 134 Fed. Appx. 320, 322-23 (11th Cir. 2005) (striking portions of the plaintiff's

---

[19] InComm uses similar language to invoke these conclusions, "political incentives and alliances," Compl. ¶8, and "favoritism towards Blackhawk," *id.* ¶¶137, 187, which should also be stricken.

summary judgment motion concerning the bankruptcy filing of another employee who was a witness); *Red Roof Inns, Inc.*, 2020 WL 1872333, at *5 (striking allegations with "no bearing on issues in this case" that "could serve to prejudice Defendants and confuse the facts at issue").

## IV.    CONCLUSION

For the foregoing reasons, this case should be dismissed in its entirety with prejudice. If the case is not dismissed, section IV.E of the Complaint, including paragraphs 187-96 and the title, should be stricken.

Respectfully submitted, this 12th day of February, 2025.

/s/ Lauren A. Warner
Lauren A. Warner
Georgia Bar. No. 425769
lwarner@cglawfirm.com
Brandi Z. Murrain
Georgia Bar No. 167467
bmurrain@cglawfirm.com
Sanjay Karnik*
Illinois Reg. No. 6300156
skarnik@cglawfirm.com
CHILIVIS GRUBMAN
1834 Independence Square
Atlanta, GA 30338
Telephone: 404-233-4171
Facsimile:  404-261-2842

*Counsel for Defendants David Chiu and the City and County of San Francisco*

*\*Pro Hac Vice* forthcoming

35

## <u>CERTIFICATION OF FONT SIZE</u>

The foregoing was prepared in Times New Roman, 14-point font, approved

by the Court in Local Rule 5.1 (C).

/s/ Lauren A. Warner
Lauren A. Warner
Georgia Bar No. 425769
lwarner@cglawfirm.com
CHILIVIS GRUBMAN
1834 Independence Square
Atlanta, GA 30338
Telephone: 404-233-4171
Facsimile:  404-261-2842

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2025, I electronically filed the foregoing

Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will

automatically send e-mail notification of such filing to all attorneys of record.

*/s/ Lauren A. Warner*
Lauren A. Warner
Georgia Bar No. 425769
lwarner@cglawfirm.com
CHILIVIS GRUBMAN
1834 Independence Square
Atlanta, GA 30338
Telephone: 404-233-4171
Facsimile:  404-261-2842
