# EXHIBIT A

DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 173594
Chief Deputy City Attorney
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
JOHN H. GEORGE, SBN 292332
DAVID S. LOUK, SBN 304654
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA  94102-5408
Telephone:     (415) 554-4223
Facsimile:     (415) 437-4644
E-Mail:         John.George@sfcityatty.org
                David.Louk@sfcityatty.org

Attorneys for Plaintiff
PEOPLE OF THE STATE OF CALIFORNIA, acting by
and through San Francisco City Attorney DAVID CHIU

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/09/2023**
**Clerk of the Court**
BY: AUSTIN LAM
Deputy Clerk

**CGC-23-610333**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, acting by and through San Francisco City Attorney DAVID CHIU, | Case No. |
| | **COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES FOR VIOLATIONS OF BUSINESS AND PROFESSIONS CODE SECTION 17200** |
| Plaintiff, | |
| vs. | |
| INCOMM FINANCIAL SERVICES, INC.; TBBK CARD SERVICES, INC.; SUTTON BANK; PATHWARD N.A.; and DOES 1 through 10, | |
| Defendants. | |

Plaintiff, the People of the State of California (the "People"), acting by and through San

Francisco City Attorney David Chiu, brings this action against Incomm Financial Services, Inc.

("Incomm"), TBBK Card Services, Inc., Sutton Bank, and Pathward N.A. (together, the "Bank

Defendants"), and alleges as follows:

# INTRODUCTION

1.    Each year, people in the United States load more than half a trillion dollars onto prepaid cards.  The cards are popular gifts, often given as an alternative to cash.  They are also used by many without access to a credit cards or traditional bank account to pay bills, make online purchases, and pay for transactions that are difficult or impossible to complete with cash.  As with traditional bank deposit accounts accessible through bank debit cards, consumers rightfully expect the money they put on prepaid cards to be available to spend when they or the gift recipient uses their card.

2.    Incomm is a major provider of prepaid nonreloadable debit cards that are accepted everywhere debit cards are accepted, which it sells as "Vanilla"-branded cards (hereinafter "Vanilla cards")[1] throughout California and the United States in retailers such as Safeway and Target.  For years, numerous cardholders of nonreloadable Vanilla debit cards (hereinafter "Vanilla cardholders") have discovered, often when using their card for the first time, that the money put on their cards is gone and the balance is $0.  Hundreds of consumers have reported remarkably similar experiences of buying or receiving a Vanilla card, attempting to use it to pay, having the card declined for insufficient funds, and then learning the funds were spent by someone else – without the consumer's permission, and before they ever had a chance to use the card.  Vanilla cardholders have reported these experiences to news media throughout the country and on numerous online review and consumer complaint websites.

3.    Incomm's insufficient security is the direct cause of the theft of money from its nonreloadable Vanilla debit cards, a practice known as "card draining."  Its lax security includes the packaging that Vanilla cards are sold in, which allows easy access to the card inside, as well as the lack of other protocols that prevent anyone but the rightful cardholder from making purchases with a Vanilla card.

4.    Despite Incomm having known for years that its nonreloadable Vanilla debit card's lax security features lead to numerous card-draining incidents, it has not sufficiently improved the cards'

---

[1] On information and belief, Incomm markets its nonreloadable prepaid Vanilla cards under two brands, the "Vanilla Gift Card" and the "OneVanilla Card," but these cards are functionally the same.  *See* Vanilla Gift, <https://www.vanillagift.com/> [last visited November 9, 2023]; OneVanilla, <https://www.onevanilla.com/> [last visited November 9, 2023].

packaging or implemented other changes to prevent those losses.  In contrast, many of Incomm's competitors have implemented enhanced security features that significantly deter and prevent card draining.  In fact, on information and belief, Incomm has implemented such improved security features for its *reloadable* cards, and so it is inexcusable that Incomm has not improved the security and packaging of its nonreloadable Vanilla cards.  As the direct result of Incomm's years-long negligence, numerous consumers and gift recipients have been needlessly subjected to card draining.

5.      Worse still, neither Incomm nor the Bank Defendants, which issue Vanilla cards, have complied with their obligations under California law to reimburse Vanilla cardholders for unauthorized transactions.  Incomm, despite promising to resolve cardholders' complaints of unauthorized transactions within 90 days, simply never responds to many Vanilla cardholders who wait for hours on hold, complete Incomm's transaction dispute form, and supply all required information and documents.  For those who do hear back, Incomm denies refunds on unlawful and implausible grounds, including that the cardholder waited too long to report the charge – even where the charge was reported immediately after it was discovered – or that the card was present at the unauthorized transaction – even where the card never left the cardholders possession and was used hundreds or thousands of miles away.

6.      In addition to failing to take reasonable steps to prevent card draining and unlawfully holding consumers liable for unauthorized charges, Incomm has made numerous misleading statements about the value and security of nonreloadable Vanilla debit cards and the ability to obtain refunds for any unauthorized charges.

7.      The People bring this suit to stop Defendants' unlawful, fraudulent, deceptive, and unfair conduct, impose civil penalties on Defendants, and recover funds for those victimized.

## PARTIES

8.      Plaintiff, the People of the State of California, acting by and through San Francisco City Attorney David Chiu, prosecutes this action pursuant to Business and Professions Code section 17200 *et seq*.

9.      Defendant Incomm Financial Services, Inc. is a South Dakota corporation headquartered in Columbus, Georgia.  Incomm has been in business since 1992 and sells prepaid gift

cards, reloadable debit cards, and provides other payment-related services to businesses and consumers. Incomm sells Vanilla cards in San Francisco and throughout California and the United States. Incomm also maintains www.vanillagift.com and www.onevanilla.com, websites available to Californians.

10. Defendant TBBK Card Services, Inc. ("TBBK") is a South Dakota corporation headquartered in Sioux Falls, South Dakota. TBBK is a subsidiary of The Bancorp Bank, a Delaware corporation headquartered in Wilmington, Delaware. TBBK issues Vanilla cards sold and serviced by Incomm, including cards sold in San Francisco and throughout California.

11. Defendant Sutton Bank is an Ohio corporation headquartered in Attica, Ohio. Sutton Bank issues Vanilla cards sold and serviced by Incomm, including cards sold in San Francisco and throughout California.

12. Defendant Pathward N.A. is a Delaware corporation headquartered in Sioux Falls, South Dakota. Pathward N.A. is a subsidiary of Pathward Financial, Inc., which is a Delaware corporation headquartered in Sioux Falls, South Dakota. Prior to 2022, Pathward N.A. was known as MetaBank and Pathward Financial, Inc. was known as Meta Financial Group, Inc. Pathward N.A. issues Vanilla cards sold and serviced by Incomm, including cards sold in San Francisco and throughout California.

13. The true names and capacities of Defendants sued herein under the fictitious names Does 1 through 10, inclusive, are unknown to the People. The People will seek leave of court to amend this Complaint to allege such names and capacities as soon as they are ascertained.

14. Whenever this complaint refers to any act of any corporate defendant, such allegation shall be deemed to mean that such corporate defendant did the acts alleged in the complaint through its officers, directors, agents, employees, and/or representatives while they were acting within the actual or ostensible scope of their authority.

**JURISDICTION AND VENUE**

15. The San Francisco Superior Court has jurisdiction over this action. Defendants are engaging in unlawful, unfair, and fraudulent business practices in San Francisco, and the San Francisco City Attorney has statutory authority to prosecute this case on behalf of the People.

Complaint, Case No.                                                    n:\cxlit\li2023\230428\01703839.docx

16.     Venue is proper in this Court because some of the unlawful conduct occurred in San Francisco.

17.     There is no basis to remove this action to federal court.  It does not arise under federal law and there is no basis for diversity jurisdiction because the People are not a citizen of the State of California.  *See People of California v. Universal Syndications, Inc.* (N.D. Cal., June 16, 2009, No. C 09-1186 JF(PVT)) 2009 WL 1689651, at *2–6; *People of State of California. v. Steelcase Inc.* (C.D. Cal. 1992) 792 F.Supp. 84, 85–86.

## FACTUAL ALLEGATIONS

18.     Over the past decade, numerous Vanilla cardholders have had their money unsuspectingly stolen from their nonreloadable Vanilla debit cards.  These losses are a direct result of Incomm's insufficient security features for its nonreloadable Vanilla debit cards, which are sold in cardboard sleeves that thieves can easily open and reseal after taking a given card's numbers.  Armed with a card's numbers, thieves can drain the card of value before a cardholder even has the opportunity to use it.  The money on a nonreloadable Vanilla debit card is accessible – to rightful owners or anyone else with the card's information – without a PIN or any registration process that protects against fraudulent transactions.

19.     Incomm, which has known about rampant card-draining of its nonreloadable Vanilla debit cards for years, has nonetheless failed to prevent the practice by sufficiently improving the cards' security features.  Incomm and the Bank Defendants have also failed to refund cardholders for unauthorized transactions as required by California law.  Instead, Incomm has misled consumers about nonreloadable Vanilla debit cards' security and the ability to get refunds for unauthorized transactions.  Defendants' practices have harmed numerous consumers for years.

## I.     Vanilla Prepaid Debit Cards

20.     Prepaid cards are sold in two varieties.  The first, "open loop" or "general use" cards, are associated with a specific payment processing company (*e.g.*, Visa, Mastercard, American Express) and can be used at any merchant that accepts that type of card.  The second, "closed loop"

Complaint, Case No.                                                      n:\cxlit\li2023\230428\01703839.docx

cards, can only be used at specific retailers associated with those cards.[2]

21.     Among Incomm's primary prepaid products are its Vanilla-branded open-loop cards, including "Vanilla Gift Cards" and "OneVanilla Cards."  These cards are nonreloadable prepaid debit cards sold in various denominations from $10 to $500.

22.      Like a debit card associated with a traditional bank account, a nonreloadable Vanilla debit card can be used to pay for goods and services.  Like a traditional bank account-linked debit card, the balance of such cards is drawn down in the amount of each purchase until the balance is depleted and no money remains on the card.  These Vanilla cards have the word "DEBIT" printed on the front, as shown in this screenshot from Incomm's Vanilla card website, www.vanillagift.com:



23.     The bank that issues the Vanilla card acts as the custodian of the Vanilla cardholder's funds, which are placed in an account at that bank and drawn down as the card is used.

24.     Incomm, in the Vanilla cardholder agreements, identifies itself as the "program manager" that provides "services related to your [the cardholder's] card on" the Bank Defendants' behalf as their agent and explains that when the card is used, the holder "authorize[s] us [Incomm]" to

---

[2] *Understanding Prepaid Cards* (Summer 2022) Consumer Financial Protection Bureau, at pp. 2-3 <https://files.consumerfinance.gov/f/documents/cfpb_building_block_activities_understanding-prepaid-cards_handout.pdf> [last visited November 9, 2023].

Complaint, Case No.                                                                              n:\cxlit\li2023\230428\01703839.docx

debit the "stored value account" associated with the card.

25.    Nonreloadable Vanilla debit cards are available as Mastercard or Visa cards and can generally be used at merchants that accept Mastercard or Visa.  Like other Mastercard and Visa cards, nonreloadable Vanilla debit cards have a sixteen-digit number associated with the account.

26.    Vanilla cards are sold to consumers for personal, family, or household purposes and are not intended for business or commercial purposes.  At least one version of Incomm's cardholder agreements provides that a Vanilla card "is not designed for business use, and we [Incomm] may close it if we determine it is being used for business purposes."

27.    When purchasing a Vanilla card, a consumer pays a one-time "purchase" or "activation" fee of $2.95 to $5.95 depending on the value of the card.  Incomm also charges, for some of its cards, an "inactivity fee" of $3.95 per month beginning in the 13th month of inactivity.

28.    Vanilla cards like the "Vanilla Gift Card" and "OneVanilla Card" are not reloadable by the consumer or recipient.  For these cards, once the funds are depleted, the card cannot be used for further purchases and the cardholder cannot put additional funds on the card or in the account linked to the card.

29.    A Vanilla cardholder can check the balance of their card, as well as see past transactions, on Vanilla's website by entering the sixteen-digit number from their card, the expiration date, and the three-digit CVV number (the three-digit card verification value on the back of the card). Below is a screenshot of the www.vanillagift.com page on which a cardholder can check the balance and transaction history of their Vanilla card:

///

///

///

///

///

///

///

///

Complaint, Case No.                                                    n:\cxlit\li2023\230428\01703839.docx

30.    Balance and transaction information can also be obtained by calling Incomm and providing the same information over the phone.  Incomm does not transmit periodic statements showing transactions or balances to Vanilla cardholders.

31.    Nonreloadable Vanilla debit cards are sold in many retailers in San Francisco and throughout California and the United States, including Walgreens, Target, Safeway, and CVS.  The cards can also be bought from Incomm online at www.vanillagift.com.

32.    Nonreloadable Vanilla debit cards are often displayed in retail stores on large racks among gift cards for particular stores or brands, for example, gift cards to the Apple Store or Starbucks.  These displays are typically prominently located on the ends of aisles, and in larger stores they are often located in or at the end of multiple aisles.  On information and belief, at retailers in San Francisco, nonreloadable Vanilla debit cards are often the only general-use prepaid card (*i.e.*, accepted by a variety of merchants) available for sale.

II.    **Nonreloadable Vanilla Debit Card Packaging and Security Features**

33.    Nonreloadable Vanilla debit cards are packaged in a cardboard sleeve that also serves as the hangtag to display the cards on the rack at the retailer.  The packaging has a window on the back that displays the back of the card, which has a barcode printed on it.

///

///

Complaint, Case No.                                                                          n:\cxlit\li2023\230428\01703839.docx

34.    This is what the Vanilla card packaging looks like:

 

35.    Because a nonreloadable Vanilla debit card is secured only by the cardboard sleeve, it is possible to open the sleeve to see the front of the card, including the full card number, before resealing the sleeve, so that it does not appear to have been tampered with.

36.    When such a card is purchased, the cashier scans the barcode and the card is then activated and ready to use.  No further registration is required.  Once that card is activated, the full balance is accessible.

37.    Nonreloadable Vanilla debit cards generally do not require a PIN to be entered to complete a purchase.  If a card terminal or merchant does require a PIN to complete a transaction, a Vanilla cardholder may enter any four-digit number, which then becomes that card's PIN, unless and until it is changed.

38.    Such debit cards are subject to an applicable cardholder agreement that sets out the terms and conditions of using the card.  Incomm posts some card agreements on the Vanilla website and includes one in each card's packaging.

39.    The exact terms of the cardholder agreement vary depending on which Bank Defendant

9

(Pathward, Sutton, or TBBK) is the issuing bank and whether the terms have been changed since the card was purchased.  Although they vary by issuing bank, each cardholder agreement available on Incomm's Vanilla card website contains terms regarding unauthorized transactions.  Regardless of the minor variations, all of Incomm's cardholder agreements include misleading statements about, among other topics, the security of funds on Vanilla cards and obtaining refunds for unauthorized transactions.

40.    Incomm's cardholder agreements are quintessential contracts of adhesion.  The user of the card "agrees" to be bound by the terms, but the terms are inside the card's packaging, and therefore not accessible until after the card is purchased.  Incomm's website provides a space to enter the last 4 digits of the card to retrieve its terms, but the card digits are also hidden inside the packaging and not accessible to a purchaser before buying the card.

### III.    The Long History of Vanilla Card Draining and Incomm's Knowledge of It

41.    For at least a decade, numerous Vanilla cardholders have suffered from a practice known as "card draining."  Card draining describes the practice in which a cardholder's Vanilla card is used by someone else to make unauthorized transactions without the cardholder's permission, often resulting in the total depletion of the card's balance before the rightful owner ever has a chance to use the card.

42.    Cardholders regularly discover that the balance of their Vanilla card has been stolen when they attempt to use the card for the first time and, embarrassingly, it is declined by a merchant for insufficient funds.  The Vanilla cardholder then checks the balance of their card online only to discover one or more transactions they did not authorize, often in locations far from where they are or at online retailers they have never heard of, let alone transacted with.

43.    Since at least 2013, media outlets have repeatedly reported on incidents of Vanilla cards being drained of funds before their owners have had the chance to use them.  The following are just some of the many news stories reporting on Vanilla card draining:

a.    In January 2013, Global News in Toronto, Canada reported that Bill Patterson was given a $250 Vanilla card as a retirement gift, but that before he had a chance to use, all but $2.50 was spent by someone else while the card was in the original package at Patterson's house.  Patterson

Complaint, Case No.                                              n:\cxlit\li2023\230428\01703839.docx

explained that he had called the number on the card numerous times and was told a replacement card would be sent to him, but that it never was and each time he called Incomm had a different excuse for the delay. He was clear that he would not buy a Vanilla card and warned others, "I'd stay away from it because you don't know what you're getting."[3]

   b. In July 2019, WKRG News in Mobile, Alabama reported how Alex Brown bought a $250 Vanilla card, went home to check the balance, and discovered that the card had no money on it. She soon discovered that inside the card's packaging was a barcode printed out and placed over the code on the Vanilla card. The $250 she intended to put on the Vanilla card had instead been credited to whatever card the second barcode was linked to. Ms. Brown went back to the Walgreens where she bought the Vanilla card and discovered three other cards had been tampered with just as hers had.[4]

   c. In February 2022, WKBW TV in Buffalo, New York reported the story "Gift card balance drained before used, how hackers do it," which told how local nurse Pamela Woestendiek discovered that the entire balance of a Vanilla card she received for her birthday had been stolen before she even received the card. Shortly after the card was declined at a shoe store, she checked the balance and saw that it had all been spent on Google Music by someone else.[5]

   d. In September 2022, WCBV Channel 5 Boston aired a news story titled "Unused prepaid gift cards suddenly have balance stolen," which reported how Jason Meade received $800 in Vanilla cards from his co-workers following the death of his four-year-old son. Mr. Meade tried to use the cards to purchase a gravestone for his son's grave, but he discovered the balance had been stolen, despite having the cards in the original packaging at his house. The station also reported that

[3] Staff, *Vanilla Visa Pre-Paid Card Customer Fumes Over Missing Balance* (January 29, 2013) <https://globalnews.ca/news/385741/vanilla-visa-pre-paid-card-customer-fumes-over-missing-balance/> [last visited November 9, 2023]; Pre-Paid Vanilla Visa Card Troubles (January 29, 2013) < https://www.youtube.com/watch?v=xaDio0XdDXU> [last visited November 9, 2023].

[4] Dana Winter, *Gift Card Scam* (July 24, 2019) < https://www.wkrg.com/top-stories/107972/> [last visited November 9, 2023]; <https://www.youtube.com/watch?v=ccjrK-DH-YU> [last visited November 9, 2023].

[5] Michael Schwartz, *Gift Card Blanace Drained Before Used, How Hacker Do It* (February 08, 2022) <https://www.wkbw.com/7problemsolvers/gift-card-balance-drained-before-used-how-hackers-do-it> [last visited November 9, 2023].

Complaint, Case No.               n:\cxlit\li2023\230428\01703839.docx

Julie Mei, the director of a Boston-area nonprofit, had $500 stolen from a Vanilla card her nonprofit purchased for a family in need.  The family tried to use the card one day after the nonprofit gave it to them, but the entire balance was already drained.  The story also reported Jean Manthorne's experience of giving her nephew an Incomm-issued gift card (not branded Vanilla) that had $500 stolen off it while it was in his hands.  Ms. Mei and Mr. Meade both reported the thefts to Incomm, but neither received a response, despite waiting more than the 90 days Incomm said it would take to investigate.  Only after the station reached out to Incomm did it issue refunds.  Regardless, all three people said now that they knew how susceptible to theft the cards are, they would never buy one and tell others not to as well.[6]

e.    In November 2022, ABC7 in Irvine, California, broadcast the story "Irvine woman warns of potential scam involving Visa Vanilla gift card," which reported that Renee Venezia was gifted a $500 Vanilla card, but that when she went to use it for the first time to pay a hotel bill, the card was declined and she discovered the entire balance had been drained.  ABC reported that Ms. Venezia was "[c]onfused, embarrassed and angry" and "reached out to InComm Financial Services" only to be told in a letter from the company that 'we have verified that your card was present during the time of the purchase(s).'"  As Ms. Venezia told ABC, the card "wasn't present, because I have it."[7]

f.    In December 2022, NBC Los Angeles aired the story "Why Your New Gift Card Might Have a $0 Balance," and reported that Richard Zelinka bought 3 $300 Vanilla cards for his sister, but the entire balance was stolen from each before she could use them.  As with Ms. Polich, he received replacement cards only after NBC contacted Incomm.[8]

g.    In January 2023, NBC Bay Area aired the story "How to Avoid Gift Card

---

[6] Ben Simmoneau, *Unused Prepaid Gift Cards Suddenly Have Balances Stolen* (September 12, 2022) < https://www.wcvb.com/article/unused-prepaid-gift-cards-suddenly-have-balance-stolen/41176603> [last visited November 9, 2023].

[7] David González, *Irvine Woman Warns of Potential Scam Involving Visa Vanilla Gift Card* (November 26, 2022) <https://abc7.com/visa-gift-card-scam-vanilla-fraud-money-scams/12494591/> [last visited November 9, 2023].

[8] Christina Roher, *Why Your New Gift Card Might Have a $0 Balance* (December 21, 2022) NBC Los Angeles <https://www.nbclosangeles.com/investigations/why-gift-card-has-zero-balance-scam-holidays/3060087/> [last visited November 9, 2023].

Complaint, Case No.                                                                              n:\cxlit\li2023\230428\01703839.docx

Fraud," which featured the story of Sydney Polich, a college student who lives in Walnut Creek, and was given a $100 Vanilla card by her grandparents.  She was the victim of an unauthorized transaction that she discovered had wiped out the balance when the card was declined as she tried to make a purchase in San Francisco.  NBC Bay Area also reported that it heard from four other Bay Area residents, and dozens across the United States, who also had funds stolen from their cards.  Sydney Polich tried to get a refund from Incomm, but received no response.  Only after being contacted by NBC did Incomm refund the unauthorized transaction.[9]

        h.    In January 2023, ABC News in Knoxville, Tennessee aired the story "Loudon County man shares warning after gift card funds stolen," that described how Brian Vaughn and his fiancée went to purchase groceries with a $400 Vanilla card given by his mother only to discover that all but $3 had been stolen in the middle of the night in two transactions on CashApp, a money transfer smartphone application.  Mr. Vaughn had used Vanilla cards in the past, but once he discovered that the entire balance could be so easily stolen while the card was in his possession, he was clear that "[u]ntil they fix this situation and address this issue, I would not use them or purchase them at all."[10]

        i.    In June 2023, NBC Bay Area reported that a family in Saratoga, California purchased a $200 Vanilla gift card for a neighbor, but when the neighbor attempted to use it, the balance was $0.  The amount lost was only recovered after the news organization stepped in.[11]

44.    Consumer review websites, such as the Better Business Bureau ("BBB"), also contain hundreds of complaints about Vanilla cards being drained of their funds before the rightful owners have a chance to use them.  Like the news reports, these complaints have been ongoing for years.

45.    The following are just some of the many examples of Vanilla cardholder's reporting

_____

[9] Chris Chumura, *How to Avoid Gift Card Fraud* (Janurary 11, 2023) NBC Bay Area <https://www.nbcbayarea.com/investigations/consumer/how-to/how-to-avoid-gift-card-fraud/3126386/> [last visited November 9, 2023].

[10] Don Dare*, Loudon County Man Shares Warning After Gift Card Funds Stolen* (January 16, 2023) WATE <https://www.wate.com/investigations/loudon-county-man-shares-warning-after-gift-card-funds-stolen/> [last visited November 9, 2023].

[11] Chris Chumura, *South Bay family's sour Vanilla gift card* (June 28, 2023) NBC Bay Area Responds <https://www.nbcbayarea.com/investigations/consumer/south-bay-familys-sour-vanilla-gift-card/3262099/> [last visited November 9, 2023].  The "Responds Teams" are local news organizations that respond to consumer problems.

Complaint, Case No.                                                                                    n:\cxlit\li2023\230428\01703839.docx

that funds were stolen from their cards:

   a. On March 31, 2023, Bernadette B. wrote on the BBB's Incomm webpage that

the money on two Vanilla cards given to her daughter was stolen before they could be used:

> "Fraudulent and tampered cards and they make it difficult to collect or refund
> the amount. My daughter received TWO $100 gift cards on Xmas 2022 and
> when we tried to use them they were cleared out. I have called multiple times
> and have gotten the run around submitting ALL of the required paperwork to
> proved we have the cards and the receipt from when they were purchased. I've
> called at least 10 times and when they finally said they'd refund and send us
> new cards, I called to follow up on their promise. When I spoke to the operator
> after being on hold for 40 min, they say it's still under investigation. They give
> you the runaround and say they will email you an update, which they never do.
> So after all that and them going back on their word I'm still waiting to hear
> confirmation. I will never again get gift cards and will warn others from
> purchasing them."[12]

   b. On March 29, 2023, Leann Nielson Peterson wrote on Complaints Board

website for Vanilla cards that all of the money on a Vanilla card given to her by friends had been

stolen: "My Vanilla Visa Gift Card was used For PayPal.  I received a gift card for 175.00 from my

girlfriends. It was purchased on 03/17/23. I went to use it on 03/21/23 and it was declined. I came

home and went online to see all of it was used on paypal."[13]

   c. On November 30, 2022, Kevin in Pennsylvania wrote on Consumer Affairs

Vanilla cards website that the money on his Vanilla card was also stolen in unauthorized transactions:

> Received a $400 Vanilla gift card on 7-14-22 (purchased at CVS 7-13-22).
> Checked the balance on 11-29-22 and it was zero. A series of fraudulent
> transactions mostly to Public Storage were made from 10-12-22 through 10-20-
> 22. After finally getting through to customer service, they said I need to submit
> a Dispute Form. To get the Dispute Form, they need to open a Case Number and
> for this they need my Name, Address, Phone, Email, and DOB.[14]

   d. On August 16, 2022, Christine Mcguirewolfe wrote on TrustPilot that, like so

---

[12] Bernadette B. (March 31, 2023) Better Business Bureau
<https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/customer-reviews> [last visited November 9, 2023].

[13] Leann Nielson Peterson (March 29, 2023) Complaints Board
<https://www.complaintsboard.com/vanilla-gift-cards-b133229/page/9> [last visited November 9, 2023].

[14] Kevin (November 30, 2022) Consumer Affairs
<https://www.consumeraffairs.com/credit_cards/vanilla-visa-gift-card.html?page=3#scroll_to_reviews=true> [last visited November 9, 2023].

Complaint, Case No.              n:\cxlit\li2023\230428\01703839.docx

many others, the money on her Vanilla card was stolen immediately upon receipt:

> My gift card was skimmed immediately upon receipt. The customer service to report it stolen was horrendous. They outright lied, refused to provide a contact number for the dispute/fraud section, would not send a dispute form for 14 days, and then required another 90 days to process the refund. Even though they acknowledged receipt of the dispute form, they claimed it was lost. The actual workers appear to be intentionally stalling, not providing information, or providing false information.[15]

46.    As of November 9, 2023, the BBB's webpage for Incomm Financial Services shows over 340 reviews, with an average of 1.07 of 5 stars (1 star is the lowest rating), and over 2,300 complaints in the last 3 years (which is as far back as complaints are reported on BBB).[16]  BBB also maintains a page for Incomm, which has more than 290 reviews with an average of 1.04 stars and over 1,600 complaints from the last three years.[17]  Many of the reviews and complaints report that the consumer's money was stolen from their card and they were unable to get a refund from Incomm.

47.    As of November 9, 2023, the Consumer Affairs webpage for Vanilla prepaid cards has over 1,390 reviews, with an average "satisfaction rating" of 1.2 of 5 stars.  The reviews span from 2007 through the present.  Many of the reviews and complaints report that the consumer's money was stolen from their card and they were unable to get a refund from Incomm.[18]

48.    As of November 9, 2023, Complaints Board, a consumer advocacy website that facilitates resolutions by allowing business to respond to complaints, shows more than 400 complaints about Vanilla cards dating back to 2008.  Many of the reviews and complaints report that the consumer's money was stolen from their card and they were unable to get a refund from Incomm.[19] Complaints Board rates Vanilla Gift Cards' customer support as "Very Poor," with approximately 6%

---

[15] Christine Mcguirewolfe (August 16, 2022) Trustpilot <https://www.trustpilot.com/reviews/62fb99227e1f0c3dc2e0bfc0> [last visited November 9, 2023].

[16] Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118> [last visited November 9, 2023].

[17] Better Business Bureau <https://www.bbb.org/us/ga/atlanta/profile/gift-cards/incomm-0443-9531> [last visited November 9, 2023].

[18] Consumer Affairs <https://www.consumeraffairs.com/credit_cards/vanilla-visa-gift-card.html#scroll_to_reviews=true> [last visited November 9, 2023].

[19] Complaints Board <https://www.complaintsboard.com/vanilla-gift-cards-b133229#complaints> [last visited November 9, 2023].

Complaint, Case No.                                    n:\cxlit\li2023\230428\01703839.docx

of complaints resolved.

49.    As of November 9, 2023, Trustpilot, a customer review website, showed over 50 reviews for Incomm, with and average rating of 1.4 of 5 stars.[20]  Trustpilot has a separate page for Vanilla Visa, which has over 370 reviews, 98% of which are 1-star, the lowest available.[21]  Many of the reviews and complaints report that the consumer's money was stolen from their card and they were unable to get a refund from Incomm.

50.    Card draining, which can occur in multiple ways, is a relatively unsophisticated crime made possible by Incomm's inadequate security.

51.    One method of card draining involves opening the packaging and photographing the card, including the full card number, before returning it to the packaging and resealing the cardboard sleeve so it does not appear to have been tampered with.  The card drainer can then access Vanilla's website and enter the card number to determine if the card has been activated and see the card balance. Some reports describe how simple computer programs can be used to monitor multiple Vanilla card balances so that funds can be tracked and spent immediately after they the cards are activated.[22]  The card drainer then spends the card balance online or in a store by using the card numbers they photographed.

52.    Another method of card draining involves replacing the barcode on the back of the Vanilla card with a barcode linked to a reloadable card.  To carry out this type of card draining, the card drainer prints out a barcode associated with a reloadable card, sometimes on a sticker or label, and puts that barcode on top of the nonreloadable Vanilla card's barcode.  When the cashier scans the barcode, the money intended for the purchaser's nonreloadable Vanilla card is instead loaded onto the thief's reloadable card.

---

[20] Trustpilot <https://www.trustpilot.com/review/incomm.com> [last visited November 9, 2023].

[21] Trustpilot <https://www.trustpilot.com/review/vanillavisa.com> [last visited November 9, 2023].

[22] Caitlin Burchill, *NBC CT Responds Investigates Gift Card Grievances* (December 22, 2022) NBC Connecticut <https://www.nbcconnecticut.com/investigations/nbc-ct-responds/nbc-ct-responds-investigates-gift-card-grievances/2941300/; NBC Bay Are; NBC Los Angeles> [last visited November 9, 2023].

Complaint, Case No.                                                    n:\cxlit\li2023\230428\01703839.docx

53.     Incomm knows that its nonreloadable Vanilla debit cards are susceptible to card draining.  As discussed above (*see* ¶¶ 43–49, *supra*), news media and consumers have been reporting about card draining, including directly to Incomm for at least a decade.

54.     Incomm has also explicitly acknowledged that Vanilla card balances are drained because of "package tampering."  In multiple responses to Better Business Bureau complaints that a Vanilla card's balance was depleted before the cardholder was able to use the card, Incomm has responded that the cardholder "was a victim of a form of fraud known as package tampering. This means that [the cardholder's] card was fraudulently compromised prior to activation."[23]  Still, Incomm has failed to take reasonable steps to rectify the problem.

55.     Incomm is best suited to foreclose card draining.  As mentioned above (*see* ¶ 29, *supra*)*,* a card drainer, after copying the sixteen-digit number of an unsold Vanilla card, can input that number on Vanilla's website both to monitor when the card has been activated and to view the card balance.  On information and belief, only someone who has recorded the sixteen-digit number of an unsold Vanilla card would have any reason to conduct such checks *prior* to activation.  Given this, Incomm knows or should know that any unsold, inactive Vanilla card has been fraudulently compromised when the card's sixteen-digit number is repeatedly entered on Vanilla's website. Despite this, on information and belief, Incomm neither monitors Vanilla's website to track this data, nor uses this information to prevent compromised Vanilla cards from being sold to consumers.

## IV.    Incomm's Failure to Provide Sufficient Security for Vanilla Card Funds

56.     Funds are easily stolen from nonreloadable Vanilla debit cards as a result of Incomm's insufficient security and its knowing failure to improve it.

57.     As shown above (*see* ¶ 34, *supra*), such Vanilla cards are packaged in a thin cardboard sleeve that displays the card's barcode through a window on the back of the packaging.  These cardboard sleeves can be easily opened to access the Vanilla card, its 16-digit number, expiration date, and CVV number without displaying obvious signs of tampering.

---

[23] E.g., Incomm (December 21, 2020) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/complaints?page=12> [last visited November 9, 2023].

Complaint, Case No.                                                            n:\cxlit\li2023\230428\01703839.docx

58.     The barcode of a nonreloadable Vanilla debit card, which is displayed through a window in the packaging, is also easily accessible to those seeking to cover it with a barcode linked to the perpetrator's card.  Like opening the card to access the card numbers, this can be accomplished without leaving obvious signs of tampering.

59.     In contrast to Incomm's lax security packaging practices, other sellers of prepaid debit cards have taken several simple and inexpensive steps to increase the security of their cards.  For example, Incomm's competitor, Netspend, does not package its prepaid debit cards in a cardboard sleeve.  Instead, Netspend packages its cards in sealed plastic packs that are not easily opened without obvious signs of tampering:



60.     Additionally, some other prepaid debit card companies conceal their cards' sixteen-digit numbers, expiration dates, CVV numbers, PINs, and barcodes in places that would require dismantling the entire package to access.

///

///

///

Complaint, Case No.                                                                                      n:\cxlit\li2023\230428\01703839.docx

61.     Incomm is presumably familiar with such security features, because *Incomm itself* uses this tamper-evident plastic packaging for its *reloadable* "MyVanilla" cards.  Similar to the Netspend packages, reloadable MyVanilla cards are packaged between a cardboard backing and clear pre-formed plastic shell.  The packaging blocks the sixteen-digit card number and CVV number from plain view.  The plastic shell is affixed to the cardboard backing using heat to activate an adhesive, snuggly enclosing in the card.  In this way, the reloadable MyVanilla card packaging is not easily resealable, unlike the thin cardboard sleeves Incomm uses for its nonreloadable Vanilla cards:[24]

 

62.     Another method of securing valuable card information from plain view is to employ scratch-off or peel-off labels.  For example, Incomm's competitor, Green Dot MoneyPak, has used scratch-off labels for its prepaid debit card products.  Like Vanilla cards, Green Dot MoneyPak cards are packaged in a cardboard sleeve.  But unlike Vanilla cards, Green Dot MoneyPak cards are packaged in a cardboard sleeve with a silver coating on the back that conceals the sixteen-digit card number:[25]

---

[24] *My Vanilla Debit: Pros and Cons of Using MVD to Earn Miles* (June 11, 2023) TravelSort < https://travelsort.com/my-vanilla-debit-pros-and-cons-of-using-mvd-to-earn-miles/> [last visited November 9, 2023]; *How to Activate My Vanilla Prepaid Card* (Nov. 28, 2019) The Stuff I Use Channel <https://www.youtube.com/watch?app=desktop&v=6iR9fbkOE6o> [last visited November 9, 2023].

[25] Photos courtesy of Matthew Goldstein, N.Y. Times (July 31, 2014) <https://archive.nytimes.com/dealbook.nytimes.com/2014/07/31/popular-prepaid-money-card-opens-path-to-fraud-schemes/> [last visited November 9, 2023].

Complaint, Case No.                                                                    n:\cxlit\li2023\230428\01703839.docx

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

 

16    63.    This silver coating ensures that the sixteen-digit card number is visible only after the

17   coating is scratched off the card.  Thus, scratch marks on the coating would reasonably notify a

18   consumer or cashier that the card has been tampered with.  Indeed, a red warning box on the back of

19   the cardboard sleeve surrounding the scratch-off label warns consumers: "DO NOT BUY IF THE

20   SCRATCH OFF STRIP HAS BEEN TAMPERED WITH."

21    64.    Again, on information and belief, InComm has also used scratch-off labels in the

22   packaging for its reloadable (but not nonreloadable) cards.  For example, another version of the

23   reloadable MyVanilla Card is packaged in a cardboard sleeve, like the Green Dot MoneyPak card,

24   with a silver scratch-off coating that conceals the card's PIN:[26]

25

26

27        [26] *What is a Vanilla Reload Card and How to Load it to Your American Express Bluebird

28   Account* (Oct. 31, 2012) Million Mile Secrets < https://millionmilesecrets.com/guides/vanilla-reload-
     cards/> [last visited November 9, 2023].

20



65.     Another Incomm competitor, Blackhawk Network, employs a small tear-away cardboard strip on the back of its cardboard sleeve packaging to completely cover its prepaid debit card's sixteen-digit number and activation barcode:[27]

 

66.     Text printed on the tear-away strip instructs the cashier to remove the strip to reveal the activation barcode.  The card number and activation barcode cannot be revealed without disturbing a

[27] Photos courtesy of Kathy Kass, *Visa Gift Cards Are Now Golden*, Will Run for Miles (July 14, 2022) <https://willrunformiles.boardingarea.com/visa-gift-cards-are-now-golden/> [last visited November 9, 2023].

21

holographic sticker placed over the tear-away strip.  Above the holographic sticker is a large red stop sign symbol followed by text that reads: "FOIL SHOULD READ 'B H N'" and "DO NOT SELL IF THE HOLOGRAM IS BROKEN."  This label clearly instructs the cashier to inspect the package for tampering.  Would-be card drainers are thus unable to access the card number without alerting a cashier to their tampering.

67.    Finally, other companies, such as Chase Bank and Mastercard, have already begun to issue chip-enabled numberless cards.[28]  These cards, which have become commonplace for credit cards and bank-issued debit cards, do not have a sixteen-digit number or CVV number displayed on their face.  Instead, cardholders access these details and the card's associated PIN after registering the card on the card issuer's e-wallet app or website.  To register numberless cards, consumers first provide cashiers with their or the card recipient's personally identifiable information (*e.g.*, name and telephone number).  That identifying information is linked to the card at the time of purchase and requested when the cardholder goes to activate the card.  After activation, card information is only accessible by entering the cardholder's unique username and password on the e-wallet app or website.

68.    The use of chip-enabled cards, which are more difficult to hack than magnetic strips,[29] coupled with the removal of any numerical data from the card, significantly reduces the risk of card draining.  Incomm, however, on information and belief, has not made any of its nonreloadable debit cards chip-enabled.

---

[28] *E.g.,* Rupert Jones, *Bank Cards: Where Have All the Numbers Gone?*, The Guardian (June 11, 2022) <https://www.theguardian.com/money/2022/jun/11/bank-cards-numbers-numberless-fraud> [last visited November 9, 2023] ("the digital bank Chase has made a feature of the fully numberless debit card that you get with its current account"); *Four Facts About the Numberless Physical Card form Mastercard* (June 10, 2020) Mastercard  <https://www.mastercard.com/news/ap/en-hk/newsroom/press-releases/en-hk/2020/june/four-facts-about-the-numberless-physical-card-from-mastercard/> [last visited November 9, 2023] ("The new numberless physical card contains only a chip, the cardholder's name, and the logos of the issuing bank and credit card brand, making it seem like a personal name card.").

[29] Will Wade-Gery, *What's That Chip Doing on My Credit Card?* (Sept. 29, 2015) Consumer Financial Protection Bureau <https://www.consumerfinance.gov/about-us/blog/whats-that-chip-doing-on-my-credit-card/> [last visited November 9, 2023]; Rachel Abrams, *Chip Cards Will Require Users to Dip Rather Than Swipe* (Sept. 28, 2015) N.Y. Times <https://www.nytimes.com/2015/09/29/business/chip-cards-will-require-users-to-dip-rather-than-swipe.html> [last visited November 9, 2023].

Complaint, Case No.                                                                    n:\cxlit\li2023\230428\01703839.docx

69.     Incomm has not implemented any of these simple packaging design changes for its nonreloadable Vanilla debit cards.  These Vanilla cards can be used without registration or further activation and without first setting a PIN or other code.  The funds on a nonreloadable Vanilla debit card are accessible – to the cardholder as well as a thief – as soon as the card is activated, which occurs when the card is purchased.

70.     If a merchant's point of sale system requires a PIN to complete the transaction, then the person attempting to pay with a nonreloadable Vanilla debit card can enter any four-digit number as the PIN.  That number will then be the PIN for that card until it is reset, which can be accomplished with the information available on the card: the number, expiration date, and security code.  Thus, even if a person who accessed the card while it was in its packaging was prevented from completing a transaction because they did not have the PIN, they could reset the PIN with the information they obtained from the card.

71.     The cardholder agreements also make clear that this kind of Vanilla card "is active when it is received" and "may be used immediately upon its receipt" without any further activation.  This is different than a credit card or even some other prepaid cards, which require the cardholder to contact the card issuer by phone or online and provide certain information to activate the card before it can be used to complete any transactions – including some of Incomm's other Vanilla cards.  For example, the MyVanilla reloadable cards require users to register their card online before using it.[30]

72.     Incomm also provides details of a card's balance and transaction history to anyone who has the card's number, expiration, and security code.  This is different than a traditional credit card and other kinds of prepaid cards, which require information beyond what is on the face of the card, such as a PIN or password, to access the balance and transaction history.

73.     Despite knowing that nonreloadable Vanilla debit cards are susceptible to being drained as a result of package tampering, Incomm, on information and belief, has not improved its packaging to prevent unauthorized access to its nonreloadable cards – such as the aforementioned security features already used by Incomm's competitors (*see* ¶¶ 59–68, *supra*) and by Incomm itself for its

---

[30] MyVanilla <https://www.myvanillacard.com/> ("Sign up now to set up your online account and activate your starter MyVanilla Card.") [last visited November 9, 2023].

Complaint, Case No.                                                          n:\cxlit\li2023\230428\01703839.docx

reloadable debit cards (*see* ¶¶ 61, 64, *supra*).  Nor has it implemented other security measures to ensure that funds are available only to the rightful cardholder.

## V.    Incomm's and its Partner Banks' Failure to Refund Unauthorized Transactions

74.    As a result of Incomm's insufficient security for Vanilla cards, cardholders are deprived of money that is rightfully theirs by unauthorized transactions on their cards.  Contrary to their legal obligations, Defendants regularly fail to provide refunds for unauthorized transactions on Vanilla cards.

75.    Many of the news stories and consumer complaints describing unauthorized transactions on Vanilla cards also report that Incomm refuses or fails to provide refunds.

76.    Incomm's unauthorized transaction dispute process begins with a call to the 800-number listed in the cardholder agreements and on the Vanilla card website.  As many consumers report, this process is frustrating and unnecessarily time consuming, with many complaining that after spending long periods on hold, they are told Incomm can do nothing for them or told Incomm will send a transaction dispute form that must be completed to begin the process – a form that could easily be provided on a website or via an online form, but is not.  For example:

a.    On March 26, 2023, Eileen MacPherson wrote on Complaints Board she called Incomm to report that the entire $200 balance of her Vanilla card was spent on Paypal without her permission and was "on hold with vanilla for almost an hour," only to be told by Incomm's representative "that their policy is that it is like cash and therefore has the same risk. However, how is that possible when the card never left my possession? It has been sitting under my computer keyboard and no one had access to it."[31]

b.    On March 6, 2023, Steven L. wrote on the BBB's Incomm webpage that he had spent hours on hold and submitted all forms Incomm asked for, but had still received no refund:

> [B]ought $100 Visa and when it was attempted to be used 3 weeks later, there was no money on the card, seems someone from another state used these funds weeks earlier. i have filed 2 dispute packages with this company and spent

---

[31] Elleen MacPherson (March 26, 2023) Complaints Board <https://www.complaintsboard.com/vanilla-gift-cards-fraudulent-usage-of-my-vanilla-visa-gift-card-c1492432> [last visited November 9, 2023].

Complaint, Case No.                                                                n:\cxlit\li2023\230428\01703839.docx

> several hours on the phone trying to get my money back but to no avail. i was sent a DocUsign which i completed and that led to nothing either. i will never purchase a Visa card again...no way! this company is not doing right by the way its giving me the run around, im doing everything im asked multiple times which leads to nothing.[32]

77.    Incomm's dispute forms asks for the cardholder's name, home address, mailing address, phone number, email address, card number, and details of the disputed transaction, including the date, amount, merchant, and the merchant's phone number.  Some cardholders also report being asked for their date of birth and other personal information when reporting unauthorized transactions to Incomm's employees on the phone.

78.    After submitting the transaction dispute form to Incomm, cardholders typically receive an email from Incomm stating that it will resolve the dispute within 45 to 90 days.  But, as many consumers report, after they send their dispute forms to Incomm, receive confirmation, and are told resolution will come within 90 days, they never hear from Incomm about the transaction again, and never receive a refund.  For example:

> a.    On February 11, 2023, Juanita M. wrote on the BBB's Incomm webpage that she has waited more than 2 years with no resolution:

>> This business is the worst company i have ever in my lifetime dealt with. Oct 2021 my credit card was compromised. I reported and disputed charges immediately with merchant and card holder services. To this day Feb.2023 this issue has not been resolved. Spoke with merchant and c[a]rd services have not even contacted merchant to dispute these charges. I am being given the runaround on this issue told 45 to 90 days for issue to be resolved. Its been almost 2 **** years.[33]

> b.    On December 15, 2022, Linda E. reported on the BBB's Incomm webpage that she has not received resolution, despite waiting more than 90 days:

>> [A]fter finally speaking with a human from Vanilla's customer service, I was given paperwork to fill out, a case number, and told that the issue would be resolved for me within 90 days. Well, it has now been more than 90 days. Whenever I try calling the customer service line now, I am left on hold, and no

---

[32] Steven L (March 06, 2023) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/customer-reviews> [last visited November 9, 2023].

[33] Juanita M (February 11, 2023) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/customer-reviews> [last visited November 9, 2023].

one ever picks up.[34]

79.    For those Vanilla cardholders who do hear back from Incomm, the company regularly refuses to refund unauthorized transactions, leaving the consumer to bear 100% of the loss, which comes in addition to the activation fee paid to Incomm.

80.    Incomm regularly refuses to refund unauthorized transactions because the transaction occurred more than 60 days before it is reported to Incomm.  Incomm denies refunds on this basis regardless of how promptly the cardholder reports the stolen funds after discovering them.

81.    For example, on July 20, 2020, Incomm sent the following response to a July 15, 2020 BBB complaint reporting that a Vanilla card recipient's $100 card had been used for online gambling months before the recipient had a chance to use the card:

> We have investigated the issue with Mr. *********'s Vanilla Visa Gift Card.[35] Mr. ********* initially contacted our office on February 20, 2020 disputing an unauthorized transaction made on his card in the amount of $100.00. In accordance with the Cardholder Agreement for this card in the section titled, "Your Right to Dispute Transactions," it states; "In the case of a discrepancy or questions about the Gift Card Account transaction(s), call 1-800-571-1376, write to Vanilla Visa Gift Card Customer Service, P.O. Box 826, Fortson, GA 31808 as soon as you can. You must contact us no later than sixty (60) calendar days after we posted the transaction(s) to the Gift Card Account." The transaction in question posted to the account on April 7, 2019; therefore, the dispute was denied due to being out of timeframe.[36]

82.    Incomm issued an almost identical response to another BBB complaint on February 18, 2021, attempting to justify its denial of a refund to a Vanilla card recipient who received a card in 2020, only to discover that the balance had been depleted months before the recipient tried to use the card for the first time in June 2020:

> We have investigated the issue with *** ****'s Vanilla Visa Gift Card. *** **** initially contacted our office on June 30, 2020 disputing multiple

---

[34] Linda E (December 15, 2022) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/customer-reviews> [last visited November 9, 2023].

[35] Certain information, including some names and contact information, is redacted on the BBB's website.  The redactions in this and other excerpts from the BBB's website are as they appear on those sites.

[36] Incomm (07/22/2020) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/complaints?page=13> [last visited June 13, 2023; an archived version is on file with counsel for the People of the State of California, acting by and through City Attorney David Chiu].

Complaint, Case No.                                                                                    n:\cxlit\li2023\230428\01703839.docx

unauthorized transactions made on his card in the amount of $200.00. In accordance with the Cardholder Agreement for this card in the section titled, "Information About Your Right to Dispute Transactions," it states; "In the case of a discrepancy or questions about the Gift Card Account transaction(s), call 1-800-571-1376, write to Vanilla Visa Gift Card Customer Service, P.O. Box 826, Fortson, GA 31808 as soon as you can. You must contact us no later than sixty (60) calendar days after we posted the transaction(s) to the Gift Card Account." The transactions in question posted to the account in February 2020; therefore, the dispute was denied due to being out of timeframe.[37]

83. As NBC CT reported in December 2022, Incomm refused to issue a refund to Nancy Deaso of Monroe, Connecticut after the $350 Vanilla card she received as a gift was entirely depleted by purchases she did not make, citing the same 60-day time limit.  Despite reporting the unauthorized charges immediately after her card was declined for insufficient funds, she was told that because the charges were made months earlier, Incomm had denied her claim.[38]

84. As cardholders report—especially recipients of cards given as gifts—they often do not receive or use their cards for the first time for weeks or months after they are purchased.  Because the money is stolen immediately after the card is activated, however, they have no idea of the theft until it is too late to obtain a refund.

85. For example, Deaso explained to NBC CT, "I didn't know it was used until I went to go use it, so how could I respond in 60 days?"  NBC explained that "she hadn't rushed to use it since the expiration date was years away."[39]

86. Joseph H., in a November 19, 2022 BBB review, also reported that he did not rush to use the card, but then discovered the card's balance was stolen long before:

> I received a $200 gift card for a gift. We kept it away, since the expiration date was marked 2029. We didn't look up online reviews or checked the balance. I went to add the card to my Amazon account, but wanted to check the balance. LITTLE DID I know, the card was used by someone else literally a year ago,

---

[37] Incomm (February 18, 2021) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/complaints?page=11> [last visited June 13, 2023; an archived version is on file with counsel for the People of the State of California, acting by and through City Attorney David Chiu].

[38] Caitlin Burchill, *NBC CT Responds Investigates Gift Card Grievances* (December 22, 2022) NBC Connecticut <https://www.nbcconnecticut.com/investigations/nbc-ct-responds/nbc-ct-responds-investigates-gift-card-grievances/2941300/> [last visited November 9, 2023].

[39] Id.

1

from across the country. Like how! I called customer service, and filed complaint. Don't buy these cards. I doubt they will honor this stole funds.[40]

2

3

87.    Incomm also regularly refuses to refund unauthorized transactions based on its

4

determination that the card was present at the time of the transaction.  Incomm's denials on this basis

5

do not explain how Incomm makes such determinations, or what evidence it relied on to make it.  As

6

many Vanilla card draining victims report, Incomm could not have reasonably come to such

7

conclusions, because the cards never left their possession, yet were used to make purchases in places

they have never been, often in other cities or states.

8

88.    For example, ABC7 in Irvine, California, reported that Incomm denied Renee

9

Venezia's refund request for $500 stolen from her Vanilla card while it was in her possession because,

10

according to the denial letter, Incomm "verified that [her] card was present during the time of the

11

purchase(s)."  As Ms. Venezia told ABC, the card "wasn't present, because I have it."[41]

12

89.    On March 7, 2023, a BBB complainant reported a similar experience, stating that they

13

bought a $500 card on December 3, 2022, only to have most of the money stolen in two transactions

14

on December 4, 2022.  The person reported the unauthorized transactions to Incomm the same day,

15

December 4, but "received the final decision of my dispute that my card was present during the time of

16

the purchases, and I do not have recovery rights for this claim. I still possess this **** gift card, it

17

won't be possible that the card was present during the time of the purchase. I disagreed with this final

18

investigation."  In its response, Incomm confirmed that it had denied a refund "due to the transaction

19

being card present."[42]

20

90.    On February 13, 2023, C. O'Keefe wrote on Complaints Board that he bought a $500

21

Vanilla card for his spouse on December 24, only to discover that $498.95 was spent in an

22

unauthorized transaction at the Dollar Store just two days later on December 26.  He reported the

23

24

[40] Joseph H (November 19, 2022) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/customer-reviews> [last visited November 9, 2023].

25

26

[41] David González, *Irvine Woman Warns of Potential Scam Involving Visa Vanilla Gift Card* (November 26, 2022) ABC 7 Eyewitness News <https://abc7.com/visa-gift-card-scam-vanilla-fraud-money-scams/12494591/> [last visited November 9, 2023].

27

[42] Better Business Bureau (March 03, 2023) <https://www.bbb.org/us/ga/atlanta/profile/gift-cards/incomm-0443-9531/complaints?page=52> [last visited November 9, 2023].

28

Complaint, Case No.                                                                n:\cxlit\li2023\230428\01703839.docx

unauthorized transaction to Incomm, but he "received a response from the gift dispute team informing me that they have completed their investigation regarding the referenced ticket and that they determined that the card was present during the time of the purchase at the Dollar Store."  He then "informed [Incomm] that I couldn't have used the card as it was missing the PIN and would not scan due to a damaged magnetic strip. The person who I talked to was dismissive and told me that there is nothing that they can do."  Like the BBB complaint, Incomm confirmed that this was its finding in a response on Complaints Board.[43]

91.     As in each of these examples, Incomm, on information and belief, provides no explanation of how it determines a card was present when the cardholder claims it was not or why that is a sufficient basis to refuse a refund.

92.     In the examples above, Incomm quickly backed off its "card present" findings when publicly pressed.  ABC 7 reported that after they reached out to Incomm, the company refunded Ms. Venezia.  And following the BBB and Complaints Board complaints, Incomm responded that "Upon reinvestigation we found this dispute should have been approved."  For those who do not have the media to advocate for them or file a public complaint, Incomm, on information and belief, does not overturn its prior "card present" denials.

93.     Incomm also tells some cardholders who report unauthorized transactions that it will issue new cards refunding the transactions, but never actually sends the card and continues to mislead the consumer that a card has been, or will soon be, sent.  For example:

a.     On April 6, 2023, Robert W. wrote on the BBB's Incomm webpage that he was still waiting on a replacement card after more than three months:

> These guys are absolute crooks I cant believe they haven't been shut down I received a $250 gift card and when I went to use it I was told the card was not valid. I contacted them after being on hold for 45 minutes and was given a claim number ******** and they were going to send a replacement card. that was 3 months ago.[44]

---

[43] C. O'Keefe, *Purchased a Vanilla Gift Card ($500.00) on December 24* (February 13, 2023) <https://www.complaintsboard.com/incomm-b133612/page/2> [last visited November 9, 2023].

[44] Robert W (April 06, 2023) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/customer-reviews> [last visited November 9, 2023].

b.  On March 31, 2023, Bernadette B. wrote on the BBB's Incomm webpage that she too was promised replacement cards only to told the matter was still under investigation when she called to see where the replacements were:

> My daughter received TWO $100 gift cards on Xmas 2022 and when we tried to use them they were cleared out. I have called multiple times and have gotten the run around submitting ALL of the required paperwork to proved we have the cards and the receipt from when they were purchased. I've called at least 10 times and when they finally said they'd refund and send us new cards, I called to follow up on their promise. When I spoke to the operator after being on hold for 40 min, they say it's still under investigation. They give you the runaround and say they will email you an update, which they never do. So after all that and them going back on their word I'm still waiting to hear confirmation. I will never again get gift cards and will warn others from purchasing them.[45]

c.  On October 6, 2022, Anettemahood4 in Martinez, California wrote on Complaints Board's Vanilla cards webpage that Incomm also never sent her the replacement card it promised:

> On 3/15/22 I filed a complaint that someone from Target ran a charge of $28.90 and one minute later ran a charge of $281.04. We weren't even in Target on the charge. I got a dispute #. When I followed up after 60 days, they said it could take up to 90 days. I keep emailing asking for a status. Every once in a while I would get a response. Finally they said my replacement card was mailed 8/1/22. They said to give it 14 days to get to me. 28 days later no card. I kept emailing every day asking for the money. They finally asked me to send proof my my address. I did so. 2 days later they asked the same question. This was 9/1. Now we are on 10/6/22 and no response or money has come my way. I am so frustrated and don't know where to turn. Any suggestions would be greatly appreciated.[46]

## VI.    Consumers Are Likely to be Misled About the Security of Vanilla Cards and Incomm's Refund Process

94.    Consumers taking a Vanilla card from the rack to buy for themselves or as a gift for another are likely to be misled by Vanilla's concealment of the insufficient security exposing the cards, and the consumers' hard-earned money, to thieves.

95.    Each nonreloadable Vanilla debit card package prominently displays the dollar value available on the card – *e.g.*, $100, $250 – and that there are "NO FEES AFTER PURCHASE." (*E.g.*,

---

[45] Bernadette B (March 31, 2023) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/customer-reviews> [last visited November 9, 2023].

[46] Annettemahood4, *Money Was Taken Out of My Gift Card* (October 06, 2022) <https://www.complaintsboard.com/vanilla-gift-cards-b133229> [last visited November 9, 2023].

Complaint, Case No.                                                        n:\cxlit\li2023\230428\01703839.docx

*supra* ¶ 34.)  But, as many consumers have discovered after buying a Vanilla card, the value on the card they have purchased is actually $0 or significantly less than the amount advertised, due to the lack of reasonable security measures to prevent card draining.   Incomm, despite being aware of rampant card draining as a result of its insufficient security, does not inform potential consumers of or disclose on the packaging material information, including that: funds may be drained from the card without the purchaser's notification or consent; the actual value may therefore be significantly less than the amount disclosed on the face of the card; its security practices are inadequate to safeguard cardholders' funds on Vanilla cards; it does not take reasonable steps to prevent card draining, in contrast to some of its other prepaid debit cards; and its policy and practice is to not refund most unauthorized transactions, including as a result of card draining.

96.     Cardholders, whether Vanilla card purchasers or gift recipients, are also likely to be misled by Incomm's terms of service.  Incomm's terms include several statements that imply the Company takes active measures to safeguard cardholders' funds from fraud and theft, including: "For security reasons, we may limit the amount or number of transactions you can make"; "if the change [to the cardholder agreement] is made for security purposes, we can implement such change without prior notice"; "Never share your PIN with anyone and do not enter your PIN into any terminal that appears to be modified or suspicious."  These representations suggest Incomm's Vanilla cards are adequately secure to ensure against card draining, but Incomm's terms of service fail to disclose that the Vanilla card's security features are not adequate to safeguard cardholders' funds on Vanilla cards; that Incomm does not take reasonable steps to prevent card draining; and that its policy and practice is to not refund most unauthorized transactions, including as a result of card draining.

97.     Incomm's terms of service also misleadingly imply that Incomm refunds unauthorized transactions, including those reported more than 60 days after they are made, when, in reality, Incomm consistently refuses to provide refunds, including for unlawful reasons.

98.     Each of the cardholder agreements available on Incomm's Vanilla cards website includes a provision on unauthorized transactions.  The cardholder agreement for cards issued by TBBK provides (emphasis in original):

> Contact us immediately if you believe your Card has been lost or stolen, or an unauthorized transaction has been made without your permission using the information from your Card. We will ask for the Card number and other identifying details. **We may not be able to assist you if you do not have or provide the Card number or other information we request.** We may not be able to assist you if you do not contact us within sixty (60) days of the unauthorized transaction.

99.    The agreements for Pathward-issued cards contain a similar provision (emphasis in original):

> If you believe your Card has been lost or stolen or an unauthorized transaction has been made using the information from your Card without your permission, contact Customer Service IMMEDIATELY. We will ask for the Card number and other identifying details. **We may not be able to assist you if you do not have the Card number.** We may not be able to assist you if you do not contact us within 60 days of the unauthorized transaction. A reissued Card may take up to 30 days to process.

100.    The cardholder agreement for cards issued by Sutton Bank includes the following provision:

> If you believe your Card/Virtual Account has been lost or stolen or an unauthorized transaction has been made using the information from your Card/Virtual Account without your permission, call 1-833-322-6760 or write Vanilla Visa Gift Card/ Virtual Account Customer Service, P.O. Box 826, Fortson, GA 31808. Telephoning Customer Service is the best way of keeping your possible losses down. We may ask for the Card/Virtual Account number and other identifying details. We cannot assist you if you do not have the Card/Virtual Account number. You must contact us within sixty (60) days after the earlier of the date you electronically access your account in which the transaction was reflected, or the date we sent the FIRST written history on which the unauthorized transfer appeared.

> We reserve the right to investigate any claim you may make with respect to a lost or stolen Card/Virtual Account or unauthorized transaction, and you agree to cooperate with such investigation. We may ask you for a written statement, affidavit or other information in support of the claim. In the event of actual or suspected unauthorized use, we will cancel your Card/Virtual Account, and issue a replacement Card/Virtual Account if available funds remain on the Card/Virtual Account.

101.    These provisions state or imply that, if the cardholder reporting an unauthorized transaction provides the information Incomm requests, Incomm will assist cardholders reporting unauthorized transactions, provide refunds for unauthorized transactions, issue replacement cards in under 30 days, and may be able to assist even if the transaction is reported more than 60 days after being made or (in the case of the Sutton Bank agreement) will assist in providing refunds for transactions reported 60 days after accessing the online transaction record.

102.    Incomm's cardholder agreements are false and misleading because, among other reasons, Incomm fails to provide refunds for unauthorized transactions reported by consumers and holds consumers liable for the entire transaction amount, does not issue replacement cards within 30 days, fails to respond or issue determinations following notification of unauthorized transactions, denies refunds for transactions that occurred more than 60 days before being reported (regardless of when they were discovered or first seen online), and denies refunds when Incomm determines (without explanation) the card was present for the transaction.

103.    Reasonable Vanilla card consumers would have deemed the information about Incomm's inadequate security and actual refund practices important in determining whether to purchase Vanilla cards.  As many consumers have reported, now that they know how vulnerable Vanilla cards are to theft and how Incomm will not provide refunds, they will not buy the cards.

## VII.    Defendants' Conduct Harms Consumers

104.    Defendants' misconduct, as described above, harms consumers in multiple ways in addition to the money they lose as a result of Incomm's insufficient security.

105.    Many Vanilla cardholders reporting and seeking refunds for unauthorized transactions spend substantial amounts of time – sometimes hours – on the phone with Incomm, more time filling out the detailed transaction form and providing requested documentation, and even more following up with Incomm by phone or email, only to be ignored or have more time wasted seeking a response that never comes.  For those who file reports with the BBB, Consumer Financial Protection Bureau, or other entities that can assist in holding Incomm accountable, they spend additional time as a result of Incomm's insufficient security and Defendants' refusal to provide timely refunds.

106.    Having a card declined, especially in public – *e.g.*, the grocery store checkout with many people in line, a restaurant with a date or co-workers – is also embarrassing.  Many Vanilla cardholders find out that the balance on their card has been drained when they go to use the card in a store, restaurant, or other public setting and the card is declined.  They are then left scrambling for another way to pay, while suffering the embarrassment of appearing as though they cannot afford their purchase, or were foolish enough to think their card with insufficient funds would not be declined.  For example:

a. Brian Vaughn described to ABC News his and his fiancée's embarrassment at having their $400 Vanilla card declined at the grocery store after nearly all the money on the card was stolen: "We loaded up our buggy full of groceries. We went to check out and the embarrassment started when they said we had insufficient funds on the prepaid card. It said $3."[47]

b. Cheyenne Reynolds explained to her local news station in Hampton, Virginia, her embarrassment when the $200 Vanilla card she received from her husband was declined: "It was actually really embarrassing because I bet they thought I didn't have the money, but it just wasn't working."[48]

c. ABC News in Irvine, California, reported that local resident Renee Venezia, like other Vanilla cardholders whose money was stolen, was "[c]onfused, embarrassed and angry" when the $500 Vanilla card she was given was rejected at a hotel for having insufficient funds.[49]

///
///
///
///
///
///
///
///
///
///
///

---

[47] Don Dare, *Loudun County Man Shares Waring After Gift Card Funds Stolen* (January 16, 2023) WATE <https://www.wate.com/investigations/loudon-county-man-shares-warning-after-gift-card-funds-stolen/> [last visited November 9, 2023].

[48] Ellen Ice, Hampton Woman Loses $200 After Buying Already-activated Gift Card (December 28, 2021) WTKR <https://www.wtkr.com/news/hampton-woman-loses-200-after-buying-already-activated-gift-card> [last visited November 9, 2023].

[49] David González, *Irvine Women Warns of Potential Scam Involving Visa Vanilla Gift Card* (November 26, 2022) ABC7 Eyewitness News <https://abc7.com/visa-gift-card-scam-vanilla-fraud-money-scams/12494591/> [last visited November 9, 2023].

Complaint, Case No.                                                                  n:\cxlit\li2023\230428\01703839.docx

107.    Incomm recognizes the embarrassment that comes from having a card declined in public settings.  In a video posted on the Vanilla Card YouTube channel, a man interrupts a Vanilla cardholder who is about to pay the bill at a restaurant and warns him to check his balance before paying because restaurants sometimes put a hold on funds to cover the tip.  He then says, "the last thing you want is for your card to get declined on a lovely date like this"[50]:



108.    Nor are the recipients of Vanilla cards the only ones to experience undue embarrassment.  Vanilla card *buyers* who give a Vanilla prepaid card as a gift and then learn that the card is worthless because the money was stolen also report being very embarrassed, having effectively given friends and loved one's defective gift cards.  For example:

---

[50] Using Vanilla Visa at a Restaurant (November 3, 2011) TheVanillaCard YouTube <https://www.youtube.com/watch?v=PBsm3EdGIkk> [last visited November 9, 2023].

Complaint, Case No.                                                                              n:\cxlit\li2023\230428\01703839.docx

a.   Gladys in Las Vegas, Nevada, wrote on Consumer Affairs website on January 21, 2022 that she experienced an "embarrassing situation" when she gave her friend a Vanilla card for Christmas, but someone had "stole[n] the money already and she couldn't use[] it."[51]

b.   Chad in Akota, Tennessee, described a similar reaction on Consumer Affairs website on July 24, 2020: "I bought one of these online to send to someone else. I was embarrassed when they called to say it didn't work."[52]

109.   For some, a Vanilla card drained as a result of Incomm's insufficient security and made worthless by Defendants' refusal to provide refunds is more than embarrassing – it results in unpaid bills or late payments, which can have severe downstream financial and other consequences.  Some Vanilla cardholders without credit cards or traditional bank accounts purchase Vanilla cards to pay bills that are difficult or impossible to pay with cash, including utility bills, online rent payments, and phone or internet service.

110.   As these Vanilla cardholders report, when money is stolen from their cards, the consequences can be dire.  For example, on April 22, 2022, John B. wrote on BBB's Incomm webpage that he purchased a Vanilla card to pay his power bill, but that the money on the card was stolen, a fact he discovered "when [he] went to check [his] balance last night after [his] power was turned off." John described how he called Incomm only to be told the company would take 90 days to review the dispute packet it would send, but that this did nothing to improve his current hardship: "I now have no power or way of paying my bill. I'm at a loss as to how this company can let things like this happen. . . . It shouldn't take 90 DAYS to get your money back when it's obvious these charges were made somewhere different and one place is a KNOWN scam."[53]

---

[51] Gladys of Las Vegas, NV (January 21, 2022) Consumer Affairs <https://www.consumeraffairs.com/credit_cards/vanilla-visa-gift-card.html?page=4#scroll_to_reviews=true> [last visited November 9, 2023].

[52] Chad of Atoka, TN (July 24, 2023) Consumer Affairs <https://www.consumeraffairs.com/credit_cards/vanilla-visa-gift-card.html?page=4#scroll_to_reviews=true> [last visited June 22, 2023; an archived version is on file with counsel for the People of the State of California, acting by and through City Attorney David Chiu].

[53] John B. (April 22, 2022) Better Business Bureau <https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/customer-reviews> [last visited November 9, 2023].

Complaint, Case No.                                                      n:\cxlit\li2023\230428\01703839.docx

111.    A Vanilla card that is drained as a result of Defendants' misconduct is worse than worthless.  Incomm charges activation fees on every card, with higher fees for cards with a higher nominal value, so for every card that has its balance stolen, the cardholder has lost the card's nominal value, and the person who paid the activation fee – whether the cardholder or the person who purchased the card as a gift – has lost the value of that fee.  Incomm benefits from the activation fee regardless of whether a card's balance is stolen or spent by the rightful cardholder.

## VIII.  California Law Limits Consumers' Liability for Unauthorized Transactions on Vanilla Cards

112.    Civil Code section 1748.31 limits a debit cardholder's liability for unauthorized charges.

113.    The consumer liability limits established by section 1748.31 cannot be waived.  Civ. Code § 1748.32.

114.    A debit cardholder cannot be held responsible for an unauthorized charge unless all of the following conditions are met under Civil Code section 1748.31(a):

(1) the card is "an accepted debit card";

(2) the "issuer has given adequate notice to the debit cardholder of the potential liability";

(3) the issuer has provided "a description of the means by which the debit card issuer may be notified of loss or theft of the card";

(4) the "unauthorized use occurs before the debit card issuer has been notified by the debit cardholder that an unauthorized use of the debit card has occurred or may occur as a result of loss, theft, or otherwise"; and

(5) the "issuer has provided a means to identify the debit cardholder to whom the debit card was issued."

115.    Even if these conditions are satisfied, the cardholder is only responsible for up to $50 of an unauthorized transaction.  Civ. Code § 1748.31(a)(2).

116.    Assuming the five conditions described above are satisfied, if (1) a cardholder "fails to report an unauthorized use that appears on a periodic statement within 60 days of the debit card issuer's transmittal of the statement," and (2) "the issuer establishes that an unauthorized use would not have occurred had the debit cardholder notified the issuer within the 60-day period," then (3) the cardholder can be held liable for transactions that occur "after the close of the 60 days and before notice to the issuer."  Civ. Code § 1748.31(b).

117.    Incomm, which does not provide periodic statements to cardholders, does not comply with its obligations under Civil Code section 1748.31.

**FIRST CAUSE OF ACTION**
**VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200**
**AGAINST INCOMM**
**(Unfair Competition)**

118.    The People incorporate by reference the allegations contained in each paragraph above, as if those allegations were fully set forth in this cause of action.

119.    California Business and Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practices."

120.    Incomm has engaged in and continues to engage in unlawful, unfair, and fraudulent business acts and practices in violation of section 17200.  Such acts and practices include, but are not limited to, the following:

        a.    Incomm has violated, and continues to violate, California Civil Code section 1714 and common law negligence.  Incomm owes a duty to provide security adequate to prevent foreseeable harm to Vanilla cardholders.  Card draining is a foreseeable result of inadequate security. Incomm is aware of card draining affecting nonreloadable Vanilla debit cards and the reasons the cards are susceptible to card draining.  Incomm has breached its duty to provide security adequate to prevent foreseeable harm to Vanilla cardholders by failing to provide such security.  Vanilla cardholders and purchasers are injured as a result of Incomm's breach.

        b.    Incomm has violated, and continues to violate, California Civil Code section 1748.31 by:

            i.    Imposing liability on Vanilla cardholders for unauthorized transactions without giving adequate notice to Vanilla cardholders of the potential liability;

            ii.    Imposing liability on Vanilla cardholders for unauthorized transactions without providing a means to identify the debit cardholder to whom the debit card is issued;

            iii.    Imposing liability of greater than $50 on Vanilla cardholders without transmitting the statement identified in Civil Code section 1748.31(b);

            iv.    Imposing liability of greater than $50 on Vanilla cardholders where

38

cardholders have timely reported unauthorized charges; and

        v.   Imposing liability of greater than $50 without establishing that an unauthorized use would not have occurred had the cardholder timely notified Incomm.

        c.   Incomm has violated, and continues to violate, the Consumer Legal Remedies Act, codified at Civil Code section 1750, *et seq.* by engaging in the following practices prohibited by the Civil Code section 1770(a) in transactions which were intended to result in, and did result in, the sale of nonreloadable Vanilla debit cards:

        i.   Representing that Vanilla cards have characteristics uses, or benefits that they do not have, in violation of Civil Code section 1770(a)(5);

        ii.   Representing that Vanilla cards are of a particular standard, quality, or grade when they are of another, in violation of Civil Code section 1770(a)(7); and

        iii.   Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, in violation of Civil Code section 1770(a)(14).

        d.   Incomm's has engaged in, and continue to engage in, fraudulent business practices and in unfair, deceptive, untrue, or misleading advertising, by making deceptive, untrue, and misleading statements and omitting material information in connection with the sale of their products and services, including Vanilla cards.  Incomm's deceptive, untrue, and misleading statements include, but are not limited to, the following:

        i.   Incomm states the dollar value on each nonreloadable Vanilla debit card's packaging (*e.g.*, $50, $100, $500), but because of Incomm's insufficient security, and notwithstanding the aforementioned representations concerning the safeguarding of Vanilla cards' security, that amount is not available to all Vanilla card purchasers and recipients;

        ii.   Incomm, through statements such as "For security reasons, we may limit the amount or number of transactions you can make"; "if the change [to the cardholder agreement] is made for security purposes, we can implement such change without prior notice"; and "Never share your PIN with anyone and do not enter your PIN into any terminal that appears to be modified or suspicious," states and implies that it takes active measures to ensure the security of funds on Vanilla cards and that cardholders can protect their funds by taking measures to protect the PIN, but Incomm

does not take reasonable measures to protect money on Vanilla cards, its security practices are inadequate to safeguard cardholders' funds, a PIN is not always required to make purchases with a nonreloadable Vanilla debit card, and regardless of the precautions taken by cardholders, the money on their cards can be easily stolen; and

iii.   Incomm, through statements concerning unauthorized transactions in the cardholder agreements, states and implies that Incomm will assist cardholders reporting unauthorized transactions, provide refunds for unauthorized transactions, issue replacement cards in under 30 days, and may be able to assist even if the transaction is reported more than 60 days after being made or discovered.  However, Incomm's practice is to refuse to provide refunds for unauthorized transactions and hold the consumer liable for the transaction, deny refunds for charges made more than 60 days before they are reported, deny refunds when Incomm determines (without providing evidence) that the card was present at the transaction, not issue replacement cards within 30 days, and fail to respond or issue determinations following notification of unauthorized transactions.

e.   Incomm's practices, representations, and statements are likely to mislead a reasonable consumer.

f.   Incomm's acts and practices are unfair business practices because they offend established public policy, the harm they cause to consumers greatly outweighs any benefits associated with those practices, and they are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

**SECOND CAUSE OF ACTION**
**VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200**
**AGAINST THE BANK DEFENDANTS**
**(Unfair Competition)**

121.    The People incorporate by reference the allegations contained in each paragraph above, as if those allegations were fully set forth in this cause of action.

122.    California Business and Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practices."

123.    The Bank Defendants have engaged in and continue to engage in unlawful, unfair, and fraudulent business acts and practices in violation of section 17200.  Such acts and practices include,

but are not limited to, the following:

a.   The Bank Defendants have violated, and continue to violate, California Civil Code section 1748.31 by:

i.   Imposing liability on Vanilla cardholders for unauthorized transactions without giving adequate notice to Vanilla cardholders of the potential liability;

ii.   Imposing liability on Vanilla cardholders for unauthorized transactions without providing a means to identify the debit cardholder to whom the debit card is issued;

iii.   Imposing liability of greater than $50 on Vanilla cardholders without transmitting the statement identified in Civil Code section 1748.31(b);

iv.   Imposing liability of greater than $50 on Vanilla cardholders where cardholders have timely reported unauthorized charges; and

v.   Imposing liability of greater than $50 without establishing that an unauthorized use would not have occurred had the cardholder timely notified the Bank Defendants or their agent, Incomm.

124.   The Bank Defendants' acts and practices are unfair business practices because they offend established public policy, the harm they cause to consumers greatly outweighs any benefits associated with those practices, and they are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

**PRAYER FOR RELIEF**

The People respectfully request that the Court enter judgment in favor of the People and against Defendants, jointly and severally, and grant the following relief:

1.   Enjoin Defendants, their successors, agents, representatives, employees, and any and all other persons who act in concert or participation with Defendants by permanently restraining them from performing or proposing to perform any acts in violation of Business and Professions Code section 17200, including, but not limited to, the acts and practices alleged in this Complaint;

2.   Order Defendants to pay in restitution to California consumers all funds, with interest, unlawfully received or acquired by Defendants by means of any practice that constitutes unfair competition, under the authority of Business and Professions Code sections 17203;

41

3.      Order each Defendant to pay a civil penalty of $2,500 for each violation of Business and Professions Code section 17200, under the authority of Business and Professions Code section 17206;

4.      Order Defendants to pay the costs of suit; and

5.      Provide such further and additional relief as the Court deems just, proper, and equitable.

Dated:  November 9, 2023

> DAVID CHIU
> City Attorney
> YVONNE R. MERÉ
> Chief Deputy City Attorney
> SARA J. EISENBERG
> Chief of Complex and Affirmative Litigation
> JOHN H. GEORGE
> DAVID S. LOUK
> Deputy City Attorneys
>
> By: _____
> JOHN H. GEORGE
>
> Attorneys for Plaintiff
> PEOPLE OF THE STATE OF CALIFORNIA, acting by
> and through San Francisco City Attorney DAVID CHIU

Complaint, Case No.                                                     n:\cxlit\li2023\230428\01703839.docx