**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| INTERACTIVE COMMUNICATIONS INTERNATIONAL, INC., and INCOMM FINANCIAL SERVICES, INC., <br><br>   Plaintiffs, <br><br> v. <br><br> DAVID CHIU, and the CITY and COUNTY of SAN FRANCISCO, <br><br>   Defendants. | Civil Action No. 1:24-cv-05335-VMC |

**AMENDED ORDER[1]**

This matter is before the Court on Defendants' Motion to Dismiss Pursuant

to Rules 12(b)(2) and 12(b)(6) and Motion to Strike ("Motion") (Doc. 14). The Court

will grant in part and deny in part the Motion.

**Background**

**I.    Fraud Against Vanilla Gift Cards**

Because this case is before the Court on a motion to dismiss, the following

facts are drawn from Plaintiffs' Complaint and are accepted as true. *Cooper v. Pate*,

---

[1] The Court amends this Order to correct dismissal to be without prejudice. *See* Fed. R. Civ. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.").

378 U.S. 546, 546 (1964). Plaintiffs, Interactive Communications International, Inc. (Interactive) and InComm Financial Services, Inc. (InComm), provide "prepaid non-reloadable gift cards, including the popular Vanilla Cards." (Doc. 1 ¶ 41). Interactive is the "primary operating entity responsible for physical gift cards," while InComm is a corporate affiliate of Interactive that develops, distributes, markets, and services payment products. (*Id.* ¶¶ 39–40). Plaintiffs collectively offer their gift cards to multiple credit card networks. (*Id.* ¶ 41).

Throughout the years, Plaintiffs have faced the threat of third-party fraudsters who seek to steal these gift cards' balances by opening the packages of inactivated cards at different retail stores, stealing the cards' information, and then waiting for the cards to be activated so that funds can be stolen once loaded. (*Id.* ¶¶ 58, 61). In response to this fraud, Plaintiffs have adopted the following security measures: packaging their cards among cardboard panels that are glued together and can only be opened by destroying the packaging almost entirely, monitoring card activity once the card is activated, and working closely with law enforcement to adapt its security measures. (*Id.* ¶¶ 62, 65, 94). As a result, they have experienced only a small percentage of fraud among the many cards distributed and serviced each month. (*Id.* ¶ 58).

## II.   The San Francisco Action

On November 9, 2023, Defendant David Chiu, the San Francisco City Attorney, filed suit against Plaintiffs, and three banks that service their cards, in the Superior Court of California, San Francisco County, for violations of California's Uniform Competition Law. (*Id.* ¶¶ 101–03) (the "Action"). The California Uniform Competition Law allows the San Francisco State's Attorney's Office (the "Office") to bring consumer protection suits on behalf of the people of California and, if successful, the Office can use the proceeds from the suit for "the enforcement of consumer enforcement laws." (*Id.* ¶¶ 142, 146) (quoting the Cal. Bus. & Prof. Code §§ 17204, 17206(f)). The Action alleged, among other things, that Plaintiffs' cards were used for fraudulent activity because of Plaintiffs' inadequate security measures. (*Id.* ¶ 106). In alleging that Plaintiffs' security measures were subpar, the Action compared Plaintiffs' packaging to a local gift card competitor named Blackhawk, arguing that Blackhawk's packaging better prevented fraud, although both companies employed similar security features. (*Id.* ¶¶ 131–32, 134).

After filing the Action, the Office published a press release on its website announcing that in protecting consumers from fraud, it had filed suit against Plaintiffs. (*Id.* ¶ 205). Mr. Chiu then discussed the filing of the Action on various social media outlets, made various television appearances on local news stations,

and linked these appearances to his social media posts, all of which remain viewable online in Georgia. (*Id.* ¶¶ 207, 209, 210–11).

### III.   Plaintiffs' Response

After a failed attempt to remove the Action from the Superior Court of California on diversity grounds, Plaintiffs have 'been forced to incur the significant costs and burdens of litigation . . . [and] [t]he pendency of the suit has hampered [their] ability to plan and pursue business operations, including in California." (*Id.* ¶¶ 197, 201–02). They have also experienced reputational damage, inquiries from media outlets requesting commentary on the allegations against them, inquiries from retailers regarding their security practices, and "an erosion of consumer trust," which has also been felt in Georgia. (*Id.* ¶¶ 203–04).

As a result, on November 20, 2024, Plaintiffs filed their Complaint against Defendants alleging violations of the Due Process Clause, Equal Protection Clause, and Commerce Clause of the United States Constitution, as well as the commission of "false and defamatory statements." (*Id.* ¶¶ 226–61).

### IV.   Defendants' Motion to Dismiss

In response to the Complaint, Defendants filed the Motion arguing that Plaintiffs' claims warrant dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and Rule 12(b)(2) for lack of personal jurisdiction. (*See*

4

Doc. 14). Defendants also seek to strike certain assertions in the Complaint. (*See id.*).

Because Defendants have raised jurisdictional arguments, the Court will first address Defendants' 12(b)(2) arguments. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("[A] court should decide a 12(b)(2) motion to dismiss before a 12(b)(6) motion.); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 408 (11th Cir. 1999) (instructing courts to resolve jurisdiction before deciding the legal merits); *see also Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should address issues relating to jurisdiction before addressing the merits of a plaintiff's claim.").

**Legal Standard**

A plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A plaintiff may establish a prima facie case by presenting sufficient evidence to withstand a motion for directed verdict. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Allegiant Physicians Serv., Inc. v. Sturdy Mem'l Hosp.*, 926 F. Supp. 1106, 1112 (N.D. Ga. 1996). A party presents enough evidence to withstand

a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1554 (11th Cir. 1995); *see also Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (noting that, if the defendant makes a showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.").

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by federal courts." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, a court must have jurisdiction under the forum state's long-arm statute, and (2) the exercise of jurisdiction over the defendant must comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*; *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.") (citing Fed. R. Civ. P. 4(k)(1)(A)).

The Eleventh Circuit has instructed that district courts in Georgia cannot conflate these two inquires because Georgia's long-arm statute does not provide

6

jurisdiction that is coextensive with due process. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010). Instead, the long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* (footnote omitted).

Georgia's long-arm statute provides:

> A court of this state may exercise personal jurisdiction over any non-resident or his or her executor or administrator, as to a cause of action arising from any acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (4) Owns, uses, or possesses any real property situated within this state . . .

O.C.G.A. § 9-10-91.

**Discussion**

Plaintiffs only assert jurisdiction against Defendants using the transacting business prong of Georgia's long-arm statute.[2] (*See* Doc. 17 at 16). That prong states that a court sitting in Georgia may exercise personal jurisdiction over a nonresident defendant who "transacts any business" in the state. The Eleventh Circuit has instructed that in accordance with the Georgia Supreme Court's guidance, district courts must interpret this prong literally, and "give full effect to the breadth of its language." *Diamond Crystal*, 593 F.3d at 1264 (citing *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352, 353, 355 (Ga. 2005)). However, in recognizing that the Georgia Supreme Court "intended to broaden the reach of the long-arm statute by stripping away certain limitations not expressly contained in the statue," the Eleventh Circuit also recognized that the Supreme Court qualified this expansion by advising that courts interpreting this prong do so "only 'to the maximum extent permitted by procedural due process.'" *Id.* at 1261 (quoting *Innovative Clinical*, 620 S.E.2d at 355). Thus, under a literal reading of prong (1), a defendant does not need to physically enter Georgia to transact any business in the state. *Id.* at 1264. Therefore, "a nonresident's mail,

---

[2] Plaintiffs have explicitly abandoned their assertion of jurisdiction under all other prongs of the Georgia Long-Arm Statute. They state that "[a]lthough this Court may alternatively exercise jurisdiction under subsection (3), *see* O.C.G.A. § 9-10-91(3), InComm relies solely upon subsection (1) in the interest of streamlining the disputed issues on this motion." (Doc. 17 at 16).

telephone calls, and other "intangible" acts, though occurring while the defendant is physically outside of Georgia, must be considered." *Id.* However, in examining "all of a nonresident's tangible and intangible conduct," the court must "ask whether it can fairly be said that the nonresident has transacted any business within Georgia." *Id.*

The Complaint alleges the following tangible and intangible conduct by Defendants: (1) filing the San Francisco Action against "a Georgia entity related to business functions carried out in Georgia [that] could entail discovery of documents located in Georgia, depositions of witnesses in Georgia, and interactions with InComm employees, including in-house counsel, located in Georgia," (2) using the Action to generate revenue for the City and give a competitive boost to a local retailer, (3) Mr. Chiu's social media postings discussing the Action, and (4) Mr. Chiu's defamatory comments made via multiple social media outlets, and press appearances, all of which remain "viewable in Georgia." (Doc. 1 ¶¶ 48, 163, 205–11).

A review of the Complaint shows that Plaintiffs have not met their initial burden to show that Defendants transacted any business in Georgia. Specifically, Plaintiffs have alleged no facts establishing that any of Defendants' non-defamatory conduct was done in Georgia. Nor have Plaintiffs alleged that the Action was filed in Georgia, Defendants sent discovery requests to Georgia,

9

Defendants specifically directed social media posts to Georgia followers, Defendants gained revenue from Georgia, or that Defendants specifically implored residents in Georgia to solicit business from a local California competitor. And alleging that social media posts and press appearances made by a California citizen were viewable in Georgia, is not specific enough. *See Diamond* 593 F.3d at 1264–65 (finding that defendants transacted business within the state when it "sent purchase orders to a specific Georgia manufacturer, required delivery by customer pickup, arranged for third parties to pick up Splenda that it purchased in Georgia, and promised to pay money into Georgia."); *see also LifeBrite Lab'ys, LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 1:23-CV-03748-JPB, 2024 WL 3030657, at *4 (N.D. Ga. June 17, 2024) (citing *Kason Indus., Inc. v. Dent Design Hardware, Ltd.*, 952 F. Supp. 2d 1334, 1345 (N.D. Ga. 2013)).

Additionally, the Court will not consider Plaintiffs' argument that Defendants have "already impelled Georgia-based employees of InComm to provide affidavits, verify interrogatories, and collect documents," because they rely on a declaration that is not a part of the record before the Court. (Doc. 17 at 18). Although the Eleventh Circuit has held that trial courts can consider incorporated documents that were not attached to the complaint if "the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged," that rule does not apply here, because Plaintiffs

have failed to attach the declaration to any of their filed documents. *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Thus, the Court is prevented from assessing its centrality and authenticity and will not consider this argument.

Finally, Defendants' defamatory conduct cannot be considered as conduct sufficient to satisfy prong (1) of the long-arm statute, because prong (2) expressly bars the exercise of jurisdiction over a nonresident defendant based on defamation. (*See* Doc. 14 at 12); *see also Worthy v. Eller*, 594 S.E.2d 699, 700 (Ga. Ct. App. 2004) (holding that the Georgia Long-Arm statute "is clear, unequivocal and unambiguous in mandating the exclusion of an action predicated on defamation. Accordingly, [the defendant] is not subject to suit in Georgia for acts allegedly constituting defamation.").

Because Plaintiffs have failed to establish jurisdiction under Georgia's long-arm statute, the Court does not have to conduct an independent, second analysis of the propriety of jurisdiction under the Due Process Clause or assess Defendants' 12(b)(6) arguments. S*ee Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012) ("Because [the plaintiff] failed to demonstrate jurisdiction under Georgia's long-arm statute, we need not decide whether jurisdiction was proper under the Due Process Clause."); *Posner*, 178 F.3d at 1214 n.6 ("a court without

personal jurisdiction lacks power to dismiss a complaint for failure to state a claim.").

## Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(6) and Motion to Strike (Doc. 14) is **GRANTED in part** as to dismissal pursuant to Rule 12(b)(2) and **DENIED in part** as moot as to all other grounds. Plaintiff's Complaint (Doc. 1) is **DISMISSED without prejudice**. Plaintiffs' Motion for Leave to File a Sur-Reply (Doc. 19) is **DENIED as moot**.

The Clerk is **DIRECTED** to enter an amended judgment dismissing the case without prejudice.

**SO ORDERED** this 24th day of September, 2025.

_____
Victoria Marie Calvert
United States District Judge